## NORFOLK AND WESTERN RAILWAY CO. *v.* SIMS.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CARO-
LINA.

No. 74. Argued November 12, 1903.—Decided December 7, 1903.

The States have no power to tax directly, or by license upon the importer, goods imported from foreign countries or other States, while in their original packages, or before they have become commingled with the general property of the State and lost their distinctive character as imports. In cases not arising under the police power, where an article is made in one State and shipped in its original package in pursuance of an order to a person in another State, to be there delivered on payment of the agreed price, the sale is actually made in the former State and the seller cannot by reason of the delivery of the article and passing of the title of the property in the latter State be subjected to a license tax imposed by it on persons engaged in the sale of similar articles within that State.

THIS was a controversy between the sheriff of Person County, North Carolina, on the one part, and the Railway Company and Mrs. O. L. Satterfield on the other, which might have been the subject of a civil action, and which the parties agreed to submit, under the code of North Carolina, to the judge of the Superior Court upon the following facts, and upon the question of the liability of the defendants for a license tax under section 52 of "An act to raise revenue," ratified March 15, 1901.

Laws of 1901, p. 116. The material part of the section reads as follows:

"Every manufacturer of sewing machines, and every person or persons or corporation, engaged in the business of selling the same in this State, shall, before selling or offering for sale any such machine, pay to the state treasurer a tax of $350 and obtain a license, which shall operate for one year from the date of the issue."

The Norfolk and Western Railway Company, a Virginia corporation, operates a railroad from its main line at Lynchburg, Virginia, via Roxboro in Person County, North Carolina, to Durham, in the same State. This company had itself complied with the revenue act of 1901, and paid a license tax for the privilege of carrying on its business as a common carrier within the State of North Carolina.

Sears, Roebuck & Company, (incorporated,) of the city of Chicago, are manufacturers and dealers in sewing machines at Chicago, Illinois.

The defendant, Mrs. Satterfield, a resident of Person County, N. C., about November 1, 1901, sent an order by mail to Sears, Roebuck & Co., for a sewing machine, which was shipped by them as railroad freight from Chicago to Mrs. Satterfield at Roxboro, the railway company at Chicago issuing, on behalf of itself and its connecting railroad lines, a through bill of lading therefor, under which the sewing machine was to be delivered to Mrs. Satterfield on surrender of the bill of lading and payment of freight charges to the delivering carrier, the Norfolk and Western Railway Co.

The bill of lading was sent by Sears, Roebuck & Co. by express, C. O. D., to the express agent at Roxboro, who received from Mrs. Satterfield the price of the sewing machine, and delivered the bill of lading to her. The express agent and the railway station agent were one and the same person. Mrs. Satterfield having paid the purchase price, presented the bill of lading to the station agent, tendered the freight charges, and demanded the delivery of the sewing machine.

The railway company was willing and would have delivered the same had not the plaintiff, the sheriff and *ex officio* tax collector of Person County, insisted that Sears, Roebuck & Co. could not sell the machine to Mrs. Satterfield without paying the license tax of $350, and forbade the delivery of the machine until the tax was paid, and thereupon levied upon the machine for such tax. He also insisted that the railway company would, by delivering the machine, be acting as the agent of Sears, Roebuck & Co., and would be liable to prosecution for misdemeanor in aiding and abetting them in an unlawful sale of the sewing machine.

It also appears in the agreed statement of facts that other machines were sent by the same consignors to various purchasers in North Carolina, upon the lines of other interstate railroads, and were delivered upon the presentation of other bills of lading under the same conditions as above described.

The court found that Sears, Roebuck & Co. were indebted to the State for $350 license tax; that the levy upon the machine was lawful and valid, and plaintiff was ordered to sell the machine and apply the proceeds to the payment of the tax. The judgment was affirmed by the Supreme Court of the State. 130 N. C. 556.

*Mr. Theodore W. Reath* and *Mr. William A. Guthrie*, with whom *Mr. Joseph I. Doran* was on the brief, for plaintiff in error.

The sale of a sewing machine by a citizen of Illinois to a citizen of North Carolina upon a mail order, the order being received in Illinois and the machine being sent from Illinois to North Carolina, C. O. D., is commerce among the several States which cannot be regulated or taxed by the States.

The power of Congress, under section 8, article I, of the Constitution, is exclusive to regulate such a transaction.

The act is not a police regulation but one to raise revenue. *O'Neil* v. *Vermont*, 144 U. S. 323, was under police power and does not apply. Neither do *Howe Machine Co.* v. *Gage*, 100 U. S. 676, or *Emert* v. *Missouri*, 156 U. S. 296, which involved

the state's right to exact peddler's licenses. *Osborne* v. *Mobile,*
16 Wall. 479, has practically been overruled by later decisions.

This case is controlled by *Brown* v. *Maryland,* 12 Wheat.
419; *Leisy* v. *Hardin,* 135 U. S. 100; *Brennan* v. *Titusville,*
153 U. S. 289; *Caldwell* v. *North Carolina,* 187 U. S. 622; *Bow-
man* v. *Chicago & N. W. R. Co.,* 125 U. S. 465; *Asher* v. *Texas,*
128 U. S. 129; *Lyng* v. *Michigan,* 135 U. S. 161; *McCall* v. *Cali-
fornia,* 136 U. S. 104; *Crutcher* v. *Kentucky,* 141 U. S. 47;
*Stockard* v. *Morgan,* 185 U. S. 24.

The latest well-considered decisions of the courts of last
resort of the several States have adopted the rules settled by
this court, and the state courts have themselves struck down,
without the necessity of an appeal to this court, those revenue
or alleged police measures of the several States which, as in the
case at bar, impose a burden upon interstate commerce.
*State* v. *Hanaphy,* 90 N. W. Rep. 601; *State* v. *Hickox,* 68 Pac.
Rep. 35.

*Mr. Robert D. Gilmer,* Attorney General of the State of
North Carolina, and *Mr. James E. Shepherd* for defendant in
error.

The Chicago corporation sold or offered to sell sewing ma-
chines in North Carolina without a license as required by the
laws of that State, and thereby became indebted to the State
in the sum of $350, it being the amount of the license tax.

The transactions amounted to a sale in North Carolina, and
the sale was not made in Chicago, but was only an executory
contract which was to be completed in North Carolina, and
that until the compliance with the conditions imposed, to-wit,
the payment of the purchase money evidenced by the bill of
lading, the property was still in and under the control of the
said company. The sale was to be completed here through
the agents of the said Chicago company.

This is an attempt to evade the revenue law of the State, and
the railroad and express agents concerned in all of these trans-
actions (who were one and the same person) were the agents

of the Chicago company, and it was only through them as such agents of the said Chicago company, that a complete sale of machines was effected. The transaction is, in effect, as between these parties (the bill of lading not having been transferred to third parties), a "C. O. D." transaction. No matter what it is called, the agreement here was that the sale was not to be completed until the price was paid. Hutchins on Carriers, §§ 390 *et seq.;* Tiedeman on Sales, §§ 85 *et seq.*

This case is controlled by *O'Neil* v. *Vermont,* 144 U. S. 324; and see also *Dows* v. *Nat. Ex. Bank,* 91 U. S. 631; *Crook* v. *Cowan,* 64 N. Car. 743; *Ober* v. *Smith,* 78 N. Car. 313; *State* v. *Graves,* 121 N. Car. 632; *State* v. *Wernwag,* 116 N. Car. 1061, distinguished.

The Chicago corporation, having incurred the liability for taxes, its property was subject to levy by the defendant in error, and the machine in question was its property, the levy having been made by defendant in error before the terms had been complied with by payment and the delivery of the bill of lading.

The machine in question was the property of the Chicago company at the time of the levy, because payment and delivery of the bill of lading had not been made and it was subject to levy for the taxes due by said owner to the State for previous similar violations of the law as well as for the violation in the present transaction.

The levy was not a violation of the law as to interstate commerce.

The levy upon a debtor's property in the possession of a railroad company is not inhibited but can surely be made, and railroad companies, after the transit is ended, cannot make their warehouses places of refuge against the enforcement of legal process. The carrier is not obstructed; its duty has been performed, and it holds the machines in its warehouse as the agent of the Chicago company, and such agency concerns alone the completion of a sale by the receipt of the purchase money and delivery. It has nothing whatever to do with the carriage of

the goods and no interstate commercial element enters into the matter. 2 Shinn on Attachment, § 578; Freeman on Executions, § 160 ; Schouler on Bailment and Carriers, § 498.

As the goods were actually in North Carolina no Federal question arises. *O'Neil* v. *Vermont*, 144 U. S. 324; *State* v. *Akers*, 132 U. S. 554.

Mr. Justice Brown, after making the foregoing statement, delivered the opinion of the court.

To the ordinary mind it seems a somewhat startling proposition that a manufacturing corporation, located and doing its main business in a distant city, having no manufactory in North Carolina, no stock in trade, no place for the sale of its goods there, and no agent authorized to sell them, can be compelled to take out a license required of all those "engaged in the business of selling," from the mere fact that it had done what hundreds of others were doing daily—sent a single machine there upon a written order of a customer and under an ordinary C. O. D. consignment. If this may be done, the revenues of every State may be largely increased by adopting a similar system, since a large part of the business of retail shops in the principal cities is done by orders received, filled and the goods delivered in the same way. Of course, it is impossible to estimate the number of business houses in other States which are accustomed to collect their accounts in this manner.

If this were the law it would also follow that the consignor of every cargo of wheat sent to New York for export under a bill of lading, accompanied by a draft for the payment of the money in the usual method, might be compelled to take out a license in the State of New York as a dealer in produce, notwithstanding that all the real business was done in Chicago or North Dakota.

So, too, what the State may do directly it may authorize its municipalities to do, and if, under legislative sanction, each of the large towns in the State of North Carolina saw fit to adopt

a similar license tax, the consequence would be, not a simple interference with interstate commerce, but a practical destruction of one important branch of it.

While it may be entirely true that the property in the thing sold does not pass under a C. O. D. consignment until delivery of the goods and payment to the carrier, and hence it may be said that the sale is not completed until then, yet as matter of fact the bargain is made and the contract of sale completed as such, when the order is received in Chicago, and the machine shipped in pursuance thereof.

A sale really consists of two separate and distinct elements: first, a contract of sale, which is completed when the offer is made and accepted; and, second, a delivery of the property which may precede, be accompanied by, or follow the payment of the price, as may have been agreed upon between the parties. The substance of the sale is the agreement to sell and its acceptance. That possession shall be retained until payment of the price may or may not have been a part of the original bargain, but in substance it is a mere method of collection, and we have never understood that a license could be imposed upon this transaction, except in connection with the prior agreement to sell, although in certain cases arising under the police power it has been held that the sale is not complete until delivery, and sometimes not until payment. Were it not for the opinion of the Supreme Court of North Carolina, we should have said that the words "engaged in the business of selling the same within the State" had reference to the word "selling" in its popular and ordinary sense, of selling from a stock on hand or upon a special order to a manufacturer, and not to a mere method of collecting the money; but, however this may be, it is evident the state courts could not give it a construction which would operate as an interference with interstate commerce, and that upon this question the opinion of this court is controlling.

The cases relied upon by the State do not support its contention. In *Machine Co.* v. *Gage*, 100 U. S. 676, a Connecticut

corporation, manufacturing sewing machines at Bridgeport, had an agency at Nashville, Tennessee, from which an agent was sent out to sell machines. It was held that he was subject to a license tax upon "all peddlers of sewing machines, without regard to the place of growth or produce of material or manufacture." As it appeared that the sale was made, and wholly made, in the State of Tennessee, and apparently from a stock kept in that State, through an agent of the company, the case is not in point. This case was followed, upon a similar state of facts in *Emert* v. *Missouri*, 156 U. S. 296.

The case most earnestly pressed upon attention, however, is that of *O'Neil* v. *Vermont*, 144 U. S. 323. This was a prosecution before a justice of the peace for selling, furnishing, and giving away intoxicating liquors. The defendant was a dealer in liquors at Whitehall, New York, and was in the habit of receiving at his store orders for liquor from Vermont, accompanied by a jug to contain the liquor; and the liquors, as in this case, were sent under a C. O. D. consignment.

It was held by this court that, as the only question considered by the Supreme Court in its opinion was whether the liquor was sold by O'Neil at Rutland, or at Whitehall, and the court arrived at the conclusion that the completed sale was in Vermont, that this conclusion did not involve any Federal question, and the writ of error was dismissed. Mr. Justice Blatchford took express pains to say that "no point on the commerce clause of the Constitution of the United States was taken in the county court, . . . or considered by the Supreme Court of Vermont." The case was put by the Supreme Court of the State solely upon its police power. "If," said that court, "an express company or any other carrier or person, natural or corporate, has in possession within this State an article in itself dangerous to the community, or an article intended for unlawful or criminal use within the State, it is a necessary incident of the police powers of the State that such article should be subject to seizure for the protection of the community."

It will thus be seen that the Supreme Court of Vermont disclaimed the decision of the very question involved in this case as to the power of the States to interfere with interstate commerce by taxation of the thing imported, and the writ of error was dismissed upon the ground that no Federal question was presented for its decision, and none was necessary to the determination of the case.    Mr. Justice Field, in his dissenting opinion, thought the commerce clause of the Constitution was involved, and that the transaction was a clear interference with commerce between the States.

Upon the other hand, for the past seventy-five years and ever since the original case of *Brown* v. *Maryland*, 12 Wheat. 419, we have uniformly held that States have no power to tax directly or by license upon the importer, goods imported from foreign countries or other States, while in their original packages, or before they have become commingled with the general property of the State and lost their distinctive character as imports. In that case a law of Maryland required importers to take out a license before they could be permitted to sell their imported goods.    That was declared to be void not only as a tax upon imports, but as an infringement upon the power of Congress to regulate commerce.    The case is one of the most important ever decided by this court, and has been adhered to by a uniform series of decisions since that time.

In *Robbins* v. *Shelby Taxing District*, 120 U. S. 489, it was declared that a tax upon commercial agents not having a business house in the State, was unconstitutional as a regulation of commerce when applied to soliciting the sale of goods on behalf of individuals or firms doing business in another State, Mr. Justice Bradley remarking, apropos of what was subsequently decided in *O'Neil* v. *Vermont*, "that the only way in which commerce between the States can be legitimately affected by state laws, is when, by virtue of its police power, and its jurisdiction over persons and property within its limits, a State provides for the security of the lives, limbs, health and comfort of persons and protection of property; or when it does those

things which may otherwise incidentally affect commerce, such as  . . .  the imposition of taxes upon all property within the State, mingled with and forming part of the great mass of property therein.   But in making such internal regulations a State cannot impose taxes  . . . . upon property imported into the State from abroad, or from another State, and not yet become part of the common mass of property therein,  . . . and no regulations can be made directly affecting interstate commerce." This case was affirmed in *Asher* v. *Texas*, 128 U. S. 129.

The same rule was applied in *Welton* v. *Missouri*, 91 U. S. 275, and *Walling* v. *Michigan*, 116 U. S. 446, to a statute requiring the payment of a license from persons dealing in merchandise, not the growth, produce or manufacture of the State, and requiring no such license from persons selling goods grown, produced or manufactured within the State.   In *McCall* v. *California*, 136 U. S. 104, a license tax imposed upon the agent of a railroad between Chicago and New York soliciting business in San Francisco, was held to be void.   To the same effect are *Crutcher* v. *Kentucky*, 141 U. S. 47; *Brennan* v. *Titusville*, 153 U. S. 289, and *Stockard* v. *Morgan*, 185 U. S. 27.   Finally, in *Caldwell* v. *North Carolina*, 187 U. S. 622, another of the same line of cases, it was held that a city ordinance imposing a license upon every person engaged in the business of selling or delivering picture frames, etc., was an interference with interstate commerce, so far as applied to picture frames made in other States and shipped to an agent in the State of North Carolina; and that the transaction was not taken out of the protection of the commerce clause by the fact that the agent placed the pictures in their proper frames, 'and delivered them to the persons ordering them.   Most of the prior cases are noticed in this opinion.

Indeed, the cases upon this subject are almost too numerous for citation, and the one under consideration is clearly controlled by them.   The sewing machine was made and sold in another State, shipped to North Carolina in its original pack-

age for delivery to the consignee upon payment of its price. It had never become commingled with the general mass of property within the State. While technically the title of the machine may not have passed until the price was paid, the sale was actually made in Chicago, and the fact that the price was to be collected in North Carolina is too slender a thread upon which to hang an exception of the transaction from a rule which would otherwise declare the tax to be an interference with interstate commerce.

> *The judgment of the Supreme Court of North Carolina is therefore reversed and the case remanded to that court for further proceedings not inconsistent with this opinion.*

MR. JUSTICE HOLMES did not participate in the decision of this case.