## C. J. SEDGWICK V. THE STATE.

### No. 3079. Decided February 22, 1905.

**1.—Local Option—Interstate Commerce—C. O. D. Shipment.**

When property is shipped from one State into another on a C. O. D. contract, the shipment is interstate commerce and can not be controlled by State regulation or law.

**2.—Same—Place of Sale.**

When property is shipped from one State into another on a C. O. D. contract, the sale in such cases is at the point of shipment and not at the point of consignment.

**3.—Same—Supreme Court of the United States.**

The Supreme Court of the United States is the final authority in regard to the law governing interstate commerce.

**4.—Same—Fact Case.**

Where defendant, as the agent of a distilling company, residing in St. Louis, State of Missouri, solicited an order for whisky in Groesbeck, State of Texas, and the same was filled and shipped by his said principal per express C. O. D. from St. Louis to Groesbeck, local option being in force in the latter place; and the evidence showed further that the purchaser paid the express company the price of the whisky agreed upon when the same arrived, the defendant not receiving the money and not approving the order for the whisky but simply mailing it to his house at St. Louis. Held no violation of the local option law.

Appeal from the County Court of Limestone. Tried below before Hon. James Kimbell.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $50 and twenty days confinement in the county jail.

The opinion states the case.

*F. J. McCord and Etheridge & Baker,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of selling intoxicants, in violation of the local option law, in Limestone County. About the 18th of October, 1904, appellant went to witness Corley, and exhibited a sample of whisky, of which Corley took a drink; and gave appellant the following order, which, with other facts show a clear and unequivocal C. O. D. shipment from St. Louis, to Groesbeck, in the State of Texas, to wit:

"Order Blank.

The Mountain Grove Distilling Co.    St. Louis, Mo.

A. Berg., Prest.,                    No......October 18, 1904.
         St. Louis, Mo.

Dear sir:

Please deliver to the Wells-Fargo Express, for me, with C. O. D. shipping instructions:

| Qts. | Brand. | Per. Qt. | Total. |
|------|--------|----------|--------|
| 4 | Golden Age. Bourbon Whisky. | | 4 00 |

30 days after shipment is made duplicate it and ship me the above amount of liquor every 30 days from date of last shipment until May 1st, 1905. Provided that in every 2nd shipment I shall receive 2 extra quarts free.

Name............F. M. Corley
P. O. Address....Groesbeck          State......Texas
Ship to..........Groesbeck          State......Texas."

This order is directed to and filled by the Mountain Grove Distilling Company, in St. Louis, Missouri, and delivered to the Wells Fargo Express Company, for Corley. The whisky was received through the express company at Grosbeck, Limestone County, on the 25th day of October, 1904. Corley paid the express company the sum of four dollars, the price agreed upon; that defendant never delivered witness Corley any intoxicating liquors, nor did witness pay appellant any money for said whisky. Appellant testified in his own behalf that he was representing the Mountain Grove Distilling Company, of St. Louis, Mo., on a salary; and that he took the order as testified by Corley; that he did not endorse or approve it, but simply mailed it to his house at St. Louis. There are other facts going more into the details of the transaction occurring between Corley and appellant, which we deem unnecessary to a decision of the case.

One contention is that this shipment was interstate commerce, and therefore not a violation of the local option law. Under the facts the whisky was shipped from St. Louis to Grosbeck, Limestone County, Texas. This being true, it necessarily follows that it is an interstate commerce shipment. The authorities are so numerous sustaining this statement, we deem it almost unnecessary to refer to them. In Robbins v. Shelby Taxing Dist. 120 U. S. 489, this language is found: "The negotiations of sales of goods which are in another State for the purpose of introducing them into the State in which the negotiations are made is interstate commerce." And it is further said: "It is not competent for a State to levy a tax or impose any other restriction upon the citizens or inhabitants of other States, for selling or seeking to sell their goods in such State before they are introduced therein, and such transaction affects the very foundation of interstate trade." In Kidd v. Pearson, 128 U. S., the court said: "The power of congress to regulate commerce is absolutely free from State action coextensive with the subjects upon which it acts and cannot stop at the external boundary of a State, but must enter into the territory of every State required by the interest of commerce." In Bowman v. Ry. Co., 125 U. S., 465, the court held, that the laws of a State forbidding a common carrier to bring liquors

into or through a State designed to protect the health or morals of a country against the evils resulting from intoxicating liquors is neither an inspection law nor a quarantine law, but is essentially a regulation of commerce among the States and repugnant to the Constitution of the United States.    And in Leisy v. Hardin, 135 U. S., 100, it was held that intoxicating liquors is an article of commerce, and the subject of sale, barter and traffic, like any other commodity, in which a right of traffic exists, and are so recognized by the commercial world, the laws of congress and the decisions of the courts.    It was held in Vance v. Vandercook, 170 U. S., 438, that even after liquors reached the hands of the consignee and became a part of the general mass of property of the State, they were exempt from seizure and destruction under the State laws, if the consignee did not intend to use them unlawfully.    That it is an article of commerce would hardly be denied in Texas under the local option clause of the Constitution, for that section of the Constitution is based upon the fact that it is an article of barter, trade and sale.    See also Rhodes v. Iowa, 170 U. S., 412.

In the more recent cases of American Express Company v. Coffin, and Adams Express Company v. State of Iowa, 25 Sup. Ct. Rep. 182, 185, the Supreme Court of the United States lay down the same doctrine, and the matter was learnedly discussed.    As the opinion in American Express Company v. Coffin, so completely meets and decides the issue in this case, we have thought proper to copy it in full, and use it as the opinion of this court in this case.    The opinion was delivered by Mr. Justice White, and is as follows, to wit:

"Although the majority of the Supreme Court of Iowa doubted the correctness of a ruling previously made by that court, nevertheless it was adhered to under the rule of stare decisis, and was made the basis of the decision in this cause.    In the previous case it was held by the Supreme Court of Iowa, that, where merchandise was received by a carrier with a duty to collect the price on delivery to the consignee, the merchandise remained the property of the consignor, and was held by the carrier as his agent with authority to complete the sale.    Upon this premise it was decided that intoxicating liquors shipped C. O. D. from another State were subject to be seized on their arrival in Iowa, in the hands of the express company.    Sustaining, upon this principle, the seizure in this case, the Supreme Court of Iowa did not expressly consider the defense based on the commerce clause of the Constitution of the United States, because the court deemed that its ruling on the subject of the effect of the C. O. D. shipment was a wholly non-Federal ground, broad enough to sustain the conclusion reached.    And this the court considered was sanctioned by O'Neil v. Vermont, 144 U. S., 324, 36 L. ed. 450, 12 Sup. Ct. Rep., 693.

"In accord with the opinion of the Supreme Court of Iowa it is insisted at bar that this writ of error should be dismissed for want of jurisdiction, because the decision below involved no Federal question,

and the case of O'Neil v. Vermont, 144 U. S., 324, 36 L. ed. 450, 12 Sup. Ct. Rep., 693, is relied upon. The contention is untenable. As pointed out in Norfolk & W. R. Co. v. Sims, 191 U. S., 446, 48 L. ed. 256, 24 Sup. Ct. Rep., 151, the view taken of the O'Neil case is a mistaken one. True, in that case the Supreme Court of Vermont gave to a C. O. D. shipment the effect attributed to it by the Supreme Court of Iowa in this case. True, also, a writ of error was prosecuted from this court to the Vermont court upon the assumption that the commerce clause of the Constitution was involved, but this court dismissed the writ of error because it did not appear that the commerce clause of the Constitution was relied on in the State court, was in any way called to the attention of the court, or was passed upon by it. As on this record it appears that the protection of the commerce clause was directly invoked in the State court, it is apparent that the O'Neil case is inapposite. And as, in order to decide the contention that the judgment below rests upon an adequate non-Federal ground, we must necessarily consider how far the C. O. D. shipment was protected by the commerce clause of the Constitution, which is the question on the merits, we pass from the motion to dismiss to the consideration of the rights asserted under the commerce clause of the Constitution.

"We can best dispose of such asserted rights by a brief reference to some of the controlling adjudications of this court.

"In Bowman v. Chicago & N. W. R. Co., 125 U. S., 465, 31 L. ed. 700, 1 Inter. Com. Rep., 823, 8 Sup. Ct. Rep., 689, 1062, it was held that the statutes of Iowa forbidding common carriers from bringing intoxicating liquors into the State of Iowa from another State or Territory without obtaining a certificate required by the laws of Iowa was void, as being a regulation of commerce between the States, and, therefore, that those laws did not justify a common carrier in Illinois from refusing to receive and transport intoxicating liquors consigned to a point within the State of Iowa.

"In Leisy v. Hardin, 135 U. S., 100, 34 L. ed. 128, 3 Inter. Com. Rep., 36, 10 Sup. Ct. Rep., 681, it was held that a law of the State of Iowa, forbidding the sale of liquor in that State, could not be made to apply to liquors shipped from another State into Iowa, before the merchandise had been delivered in Iowa, and there sold in the original package, without causing the statute to be a regulation of commerce, repugnant to the Constitution of the United States. In Rhodes v. Iowa, 170 U. S., 412, 42 L. ed. 1088, 18 Sup. Ct. Rep., 664, the same doctrine was reiterated, except that it was qualified to the extent called for by the provisions of the act of Congress of August 8, 1891, (26 Stat. at L. 313, chap. 728, U. S. Comp. Stat., 1901, p. 3177), commonly known as the Wilson act. In that case a shipment of intoxicating liquors had been made into the State of Iowa from another State, and the agent of the ultimate railroad carrier in Iowa was proceeded against for an alleged violation of the Iowa law, because, when the mer-

chandise reached its destination in Iowa, he had moved the package from the car in which it had been transported to a freight depot, preparatory to delivery to the consignee. The contention was that, as by the Wilson act, the power of the State operated upon the property the moment it passed the State boundary line; therefore the State of Iowa had the right to forbid the transportation of the merchandise within the State, and to punish those carrying it therein. This was not sustained. The court declined to express an opinion as to the authority of congress, under its power to regulate commerce, to delegate to the States the right to forbid the transportation of merchandise from one State to another. It was, however, decided that the Wilson act manifested no attempt on the part of congress to exert such power, but was only a regulation of commerce, since it merely provided, in the case of intoxicating liquors, that such merchandise, when transported from one State to another, should lose its character as interstate commerce upon completion of delivery under the contract of interstate shipment, and before sale in the original packages.

The doctrine of the foregoing cases was applied in Vance v. W. A. Vandercook Co., 170 U. S., 438, 442 L. ed. 1100, 1102, 18 Sup. Ct. Rep., 674, to the right of a citizen of South Carolina to order from another State, for his own use, merchandise, consisting of intoxicating liquors, to be delivered in the State of South Carolina.

Coming to test the ruling of the court below by the settled construction of the commerce clause of the Constitution, expounded in the cases just reviewed, the error of its conclusion is manifest. Those cases rested upon the broad principle of the freedom of commerce between the States, and of the right of a citizen of one State to freely contract to receive merchandise from another State, and of the equal right of the citizen of a State to contract to send merchandise into other States. They rested, also, upon the obvious want of power of one State to destroy contracts concerning interstate commerce, valid in the States where made. True, as suggested by the court below, there has been a diversity of opinion concerning the effect of a C. O. D. shipment, some courts holding that, under such a shipment, the property is at the risk of the buyer, and therefore that delivery is completed when the merchandise reaches the hands of the carrier for transportation; others, deciding that the merchandise is at the risk of the seller, and that the sale is not completed until the payment of the price, and delivery to the consignee at the point of destination.

But we need not consider this subject. Beyond possible question, the contract to sell and ship was completed in Illinois. The right of the parties to make a contract in Illinois for the sale and purchase of merchandise, and, in doing so, to fix by agreement the time when and condition on which the completed title should pass, is beyond question. The shipment from the State of Illinois into the State of Iowa of the merchandise constituted interstate commerce. To sustain, therefore,

the ruling of the court below would require us to decide that the law of Iowa operated in another State so as to invalidate a lawful contract. as to interstate commerce made in such other State; and, indeed, would require us to go yet further, and say that, although, under the interstate commerce clause, a citizen in one State had a right to have merchandise consigned from another State delivered to him in the State to which the shipment was made, yet that such right was so illusory that it only obtained in cases where, in a legal sense, the merchandise contracted for had been delivered to the consignee at the time and place of shipment.

"When it is considered that the necessary result of the ruling below was to hold that, wherever merchandise shipped from one State to another is not completely delivered to the buyer at the point of shipment so as to be at his risk from that moment, the movement of such merchandise is not interstate commerce, it becomes apparent that the principle, if sustained, would operate materially to cripple, if not destroy, that freedom of commerce between the States which it was the great purpose of the Constitution to promote. If upheld, the doctrine would deprive a citizen of one State of his right to order merchandise from another State at the risk of the seller as to delivery. It would prevent the citizen from one State from shipping into another unless he assumed the risk: it would subject contracts made by common carriers, and valid by the laws of the State where made, to the laws of another State; and it would remove from the protection of the interstate commerce clause all goods on consignment upon any condition as to delivery, express or implied. Besides, it would also render the commerce clause of the Constitution inoperative as to all that vast body of transactions by which the products of the country move in the channels of interstate commerce by means of bills of lading to the shipper's order, with drafts for the purchase price attached, and many other transactions essential to the freedom of commerce, by which the complete title to merchandise is postponed to the delivery thereof.

"But general considerations need not be further adverted to in view of prior decisions of this court relating to the identical question here presented. In Caldwell v. North Carolina, 187 U. S., 622, 47 L. ed., 336, 23 Sup. Ct. Rep., 229, the facts were these: The Chicago Portrait Company shipped to Greensboro, North Carolina, by rail consigned to its order, certain pictures and frames. At Greensboro the company had an agent who received the merchandise, put the pictures and frames together, and delivered them to the purchasers who had ordered them from Chicago. The contention was that the portrait company was liable to a license charge imposed by the town of Greensboro for selling pictures therein, and this was supported by the argument that, although the contract for sale was made in Chicago, it was completed in North Carolina by the assembling of the pictures and frames, and the delivery there made. It was held that the license could not be collected, be-

cause the transaction was an interstate commerce one. In the course of the opinion, after a full review of the authorities, it was observed (p. 632, L. ed., p. 341, Sup. Ct. Rep., p. 233): 'It would seem evident that if the vendor had sent the articles by an express company, which should collect on delivery, such a mode of delivery would not have subjected the transaction to State taxation. The same could be said if the vendor himself, or by a personal agent, had carried and delivered the goods to the purchaser. That the articles were sent as freight, by rail, and were received at the railroad station by an agent, who delivered them to the respective purchasers, in nowise changes the character of the commerce as interstate.'"

In Norfolk & W. R. Co. v. Sims, 191 U. S. 441, 48 L. ed. 254, 24 Sup. Ct. Rep. 151, these were the facts: A resident of North Carolina ordered from a corporation in Chicago a sewing machine. The machine was shipped under a bill of lading to the order of the buyer, but this bill of lading was sent to the express agent at the point of delivery in North Carolina, with instructions to surrender the bill on payment of a C. O. D. charge. The contention was that the consummation of the transaction by the express agent in transferring the bill of lading upon payment of the C. O. D. charge was a sale of the machine in North Carolina, which subjected the company to a license tax. The contention was held untenable. Calling attention to the fact that the contract of sale was completed as a contract in Chicago, and after reviewing some of the authorities on the subject of interstate commerce, the court said (p. 450 L. ed. p. 258, Sup. Ct. Rep. p. 154): "Indeed, the cases upon this subject are almost too numerous for citation, and the one under consideration is clearly controlled by them. The sewing machine was made and sold in another State, shipped to North Carolina in its original package for delivery to the consignee upon payment of its price. It had never become commingled with the general mass of property within the State. While technically the title of the machine may not have passed until the price was paid, the sale was actually made in Chicago; and the fact that the price was to be collected in North Carolina is too slender a thread upon which to hang an exception of the transaction from a rule which would otherwise declare the tax to be an interference with interstate commerce."

"The controlling force of the two cases last reviewed upon this becomes doubly manifest when it is borne in mind that the power of the States to levy general and undiscriminating taxes on merchandise shipped from one State into another may attach to such merchandise before sale in the original package when the merchandise has become at rest within the State, and therefore enjoys the protection of its laws, and this upon the well-recognized distinction that the movement of merchandise from State to State, whilst constituting interstate commerce, is not an import in the technical sense of the Constitution. American Steel & Wire Co. v. Speed, 192 U. S. 500, 48 L. ed. 538, 24 Sup. Ct. Rep. 365.

"As from the foregoing consideration it results that the court below erred in refusing to apply and enforce the commerce clause of the Constitution of the United States, its judgment must be reversed."

It is obvious that this decision of the Supreme Court of the United States, and the therein cited authorities clearly decide that, when property is shipped from one State into another on a C. O. D. contract, the shipment is interstate commerce and cannot be controlled by State regulations or law. It is equally obvious that the sale in such cases is at the point of shipment and not at the point of consignment. It cannot be denied that the Supreme Court of the United States is the final authority in regard to the law governing interstate commerce, and all courts and legislative bodies in the State must yield obedience to the decisions of that court. The right to control interstate commerce has been vested in the Federal government by the States in the Federal Constitution, and all State authorities must so recognize. To hold otherwise would flood our courts with cases which would ultimately be reversed by that high tribunal. Such condition of things would entail useless legislation and expense. We believe the decisions of the Supreme Court are correct.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

BROOKS, JUDGE.—Agrees that the Supreme Court decisions hold that the facts now show interstate commerce shipment and dissents from the proposition that a C. O. D. shipment is a sale at the point of shipment, but holds it a sale at point of destination.