ALLEN and HOKE, JJ., concurring; CLARK, C. J., dissenting.
The three defendants, Mutual Aid Banking Company, John H. Fisher, and A. Hatke, were indicated in the court below for unlawfully selling liquor, the indictment containing two counts, one for selling intoxicating liquor to a person to the jurors unknown, and the other for selling such liquor to Carl Spencer, a person under the age of 21 years. The defendant A. Hatke, a member of the firm of A. Hatke Co., of Richmond, Va., wholesale liquor dealers of that city, was not on trial, and the other defendants severally pleaded "not guilty" to the bill, when arraigned for trial. After the evidence was heard, the jury *Page 456 
rendered a lengthy special verdict, the material findings of which are as follows: The Mutual Aid Banking Company was, at the time stated in the bill, engaged in the ordinary business of banking in the city of New Bern, and John H. Fisher was its cashier. A short while before 29 March, 1911, Carl Spencer, who is a minor or person under 21 years of age, and unmarried, ordered from A. Hatke Co. of Richmond, (552) Va., through their agent, who was in New Bern, one case of whiskey, to be shipped over the connecting lines of the S. A. L. Railway Company and the Norfolk Southern Railway Company, to him at New Bern. Hatke Co. delivered the one case of whiskey called for in the order to the S. A. L. Railway Company at Richmond for shipment to New Bern, consigning the same to the order of themselves, "destination New Bern, N.C. notify Carl Spencer at that place," and received from the agent of the S. A. L. Railway Company a bill of lading for the liquor in the usual form. They then drew a draft on Carl Spencer for $8.25, the price of the liquor, and attached it to the bill of lading, mailing the two papers to the Mutual Aid Banking Company for collection. The liquor was shipped over the lines of the two railroad companies, and the Norfolk Southern Railroad Company duly notified Carl Spencer at New Bern of its arrival there, and that it would be held subject to charges for storage and demurrage. On the day this notice was given, Carl Spencer called at the banking house of defendant, inquired for the draft and bill of lading, and was told by the cashier, John H. Fisher, or his assistant, that the papers were there. The bank and its officers knew that the draft was for the price of the liquor, and that the bill of lading had been given by the railroad company for the package containing it. With this knowledge, the bank and its cashier, John H. Fisher, received payment of the draft from Carl Spencer and delivered the papers to him, whereupon he handed the bill of lading to the Norfolk Southern Railway Company at New Bern and received the package of whiskey from it, in the usual manner of its other customers. Before Carl Spencer paid the draft to the bank, his uncle notified John H. Fisher that he was a minor and unmarried, and requested him not to receive payment of the draft from him, with which request he declined to comply. The Mutual Aid Banking Company was incorporated under the laws of this State and authorized to conduct in New Bern a general banking business, and was doing so at the time of this transaction. A. Hatke Co. are regular wholesale dealers in liquor, having their home and place of business in Richmond, Va.
(553) The special verdict concludes as follows: "If from the foregoing facts the court shall be of opinion that in law the said *Page 457 
defendants, John H. Fisher and the Mutual Aid Banking Company, were dealers in intoxicating drinks and liquors, and that the said delivery of the said draft and bill of lading to said Carl Spencer was a sale of a quantity of such drinks and liquors, then we, the jury, do find the defendant John H. Fisher and the Mutual Aid Banking Company guilty in manner and form as charged in the bill of indictment; otherwise, we, the jury, find the defendants not guilty."
The court (Judge Foushee presiding) being of opinion, upon the verdict, that defendants were not dealers in liquors, and that the transaction described in the verdict did not constitute a sale to Carl Spencer, as charged in the indictment, directed a verdict of not guilty as to both defendants, upon the said indictment, and judgment being entered thereon for them, the State appealed.
It is conceded, as we understand, that the special verdict was returned upon the second count, and there is no verdict upon the first count. It was held in S. v. Taylor, 84 N.C. 773, that "where the jury find a defendant guilty on one count, and say nothing in their verdict concerning other counts, it will be equivalent to a verdict of acquittal as to them."
The second count of the indictment was framed on Revisal, sec. 3524, which provides that "if any dealer in intoxicating drinks or liquors sell, or in any manner part with for a compensation therefor, either directly or indirectly, or give away such drinks or liquors, to any unmarried person under the age of 21 years, knowing the said person to be under the age of 21 years, he shall be guilty of a misdemeanor; and such sale or giving away shall be prima facie evidence of such knowledge. Any person who keeps on hand intoxicating drinks or liquors for the purpose of sale or profit shall be considered a dealer within the meaning of the section." The jury, by their (554) verdict, after finding and stating certain facts, which we have already set out, submit to the court whether, upon those findings, the court is of the opinion that, in law, the defendants were dealers in intoxicating drinks and liquors, and that the acts of defendants constituted a sale of such drinks and liquors; and both questions the court decided in the negative. The verdict of the jury, therefore, was confined to the particular offense made criminal by Revisal, sec. 3524, and *Page 458 
they have not rendered a verdict for any other crime, nor have they considered the case in any other aspect. It follows that the defendants have been acquitted of the charge upon which the jury passed.
The section of the Revisal upon which the indictment was drawn not only describes the act of selling, which is unlawful, as one committed by a "dealer in intoxicating drinks or liquors," but also defines a "liquor dealer" as "a person who keeps on hand intoxicating drinks or liquors for the purpose of sale and profit." The business of the defendants is not embraced by these words. They were engaged in the business of banking, and were, in no sense, sellers of liquors or dealers therein. There is no finding of fact that they ever sold liquor of any kind or in any quantity, large or small, or that they, or either of them, ever kept "liquor on hand for sale or profit." S. v. Lawrence, 97 N.C. 492; S. v. McBrayer,98 N.C. 619. When they received the money from Carl Spencer and delivered the draft and bill of lading for the package of liquor to him, they were engaged in the ordinary and usual business of banking. So that the State failed to show that the defendants were guilty of the specific offense charged against them. The court properly instructed the jury as to the law, and the verdict of acquittal, rendered by the jury in accordance therewith, cannot be disturbed.
But assuming that the defendants, upon the facts stated in the special verdict, must be regarded in law as having assisted in making or consummating the sale of the liquor by A. Hatke Co. to Carl Spencer, we do not think the case is made any stronger for the State. The sale of the liquor to Carl Spencer by A. Hatke Co. was interstate commerce, and could not be affected by the criminal laws of the (555) State. With every disposition to enforce strictly and rigidly the laws of our State prohibiting the sale of liquor, in all cases to which they apply, we must, at the same time, give full force and effect to the provision of the Federal Constitution, which confides to Congress alone the regulation of interstate commerce. It has been enacted by Congress that liquor shipped from one State into another in the course of interstate commerce shall, after its "arrival" in the latter State, be subject to its laws. This law was passed 8 August, 1890, and is known as the Wilson Act (3 Fed. Statutes Anno., p. 853), and it has also forbidden a common carrier to collect, directly or indirectly, the purchase money for any liquor shipped over his line from one State to another, the carrier being restricted by the terms of the act of Congress to "the actual transportation and delivery of the same." Federal Penal Code (1910), sec. 239. It is not contended that either of these acts would sustain the conviction of the defendants under our law prohibiting *Page 459 
the sale of liquor in the State, except in so far as the Wilson Act allows the local law to operate after the arrival of liquor in the State, and withdraws from the protection of the Federal laws, to that extent, sales in original packages. The other act, Federal Penal Code, sec. 239, declared unlawful collections by the carrier, under c. o. d. shipments or otherwise. It is contended, though, that the defendants are guilty upon the special findings of the jury, because the package of liquor was shipped, and the bill of lading therefor was drawn to the order of A. Hatke Co. of Richmond, Va., and reached its destination in this State, at New Bern, and that the sale was made here, when the draft was paid by Carl Spencer at the bank and the bill of lading was delivered to him, as the title then passed to him from Hatke Co. But the argument leaves out of consideration the fact that the acceptance of the proposal to buy was made by them there, which acceptance was clearly evidenced by the shipment of the goods. But we need not further discuss this question, as it is one for final decision by the highest Federal court, which has said that, in determining what is interstate commerce in the transportation of liquor from one State to another, it will not attempt to reconcile conflicting (556) decisions of the State courts as to the time when the title passes in the case of a shipment c. o. d. or by draft and bill of lading attached, as in this case. A full and complete answer to the State's contention will be found in Express Co. v. Iowa, 196 U.S. 133. In that case, the present Chief Justice, writing the opinion as a justice of the Court, and referring to the very question we have before us, says that, if upheld, the doctrine would deprive a citizen of one State of his right to order merchandise from another State at the risk of the seller as to delivery, and it would prevent the citizen of one State from shipping into another State unless he assumed the risk; it would subject contracts made by common carriers, and valid by the laws of the State where made, to the laws of another State, and it would remove from the protection of the interstate commerce clause all goods on consignment upon any condition as to delivery, express or implied. More to the point, and a more conclusive utterance, is this: "Besides, it would also render the commerce clause of the Constitution inoperative as to all that vast body of transactions by which the products of the country move in the channels of interstate commerce by means of bills of lading to the shipper's order, with drafts for the purchase price attached, and many other transactions essential to the freedom of commerce, by which the complete title to merchandise is postponed to the delivery thereof." He then reviews two cases (Caldwell v. North Carolina, 187 U.S. 422; R. R. v.Sims, 191 U.S. 441), which were taken from this Court by *Page 460 
writs of error upon what Judge White says is the identical question, and both reversed. Reviewing these cases, and after stating that they are direct authorities against the present contention, and that it makes no difference how the shipment is made, whether c. o. d. or by bill of lading to the shipper's order, he proceeded as follows: "In R. R. v.Sims, 191 U.S. 441, these were the facts: A resident of North Carolina ordered from a corporation in Chicago a sewing machine. The machine was shipped under a bill of lading to the order of the buyer, but this bill of lading was sent to the express agent at the point (557) of delivery in North Carolina, with instructions to surrender the bill on payment of a c. o. d. charge. The contention was that the consummation of the transaction by the express agent in transferring the bill of lading upon payment of the c. o. d. charge was a sale of the machine in North Carolina, which subjected the company to a license tax. The contention was held untenable. Calling attention to the fact that the contract of sale was completed as a contract in Chicago, and after reviewing some of the authorities on the subject of interstate commerce, the Court said, p. 450: "Indeed, the cases upon this subject are almost too numerous for citation, and the one under consideration is clearly controlled by them. The sewing machine was made and sold in another State, shipped to North Carolina in its original package for delivery to the consignee upon payment of its price. It had never become commingled with the general mass of property within the State. While technically the title of the machine may not have passed until the price was paid, the sale was actually made in Chicago, and the fact that the price was to be collected in North Carolina is too slender a thread upon which to hang an exception of the transaction from a rule which would otherwise declare the tax to be an interference with interstate commerce." He then shows the distinction between State laws interfering with the regulation of commerce which trench upon the domain exclusively occupied by the Congress under the Constitution, and those which do not so interfere, as in the case of a property tax laid on the article transported, when it has become at rest within the State, and, therefore, enjoys the protection of its laws, which is upheld upon the ground that the movement of merchandise from State to State, whilst constituting interstate commerce, is not an import in the technical sense of the Constitution, citing Steel and Wire Co. v.Speed, 192 U.S. 500. The State may act also where the particular transaction aids rather than obstructs commerce. We need not enter upon a discussion of this view of the matter. The whole subject was reviewed by us in Range Co. v. Campen, 135 N.C. 506;Harrill v. R. R., 144 N.C. 532. Construing the Wilson Act, the *Page 461 
Court held in Wilkerson v. Rahrer, 140 U.S. 545, that it was competent for Congress to provide that certain designated (558) subjects of interstate commerce shall be governed by a rule which divests them of that character at an earlier period of time than would otherwise be the case, so as to subject them to the operation and effect of State laws, for instance, after delivery to the consignee of goods shipped to him from another State; and in Rhodes v. Iowa, 170 U.S. 412, approving the case of Wilkerson v. Rahrer, it was decided that, whilst the Wilson Act caused liquors shipped into Iowa from another State to be divested of their character as articles of interstate commerce after their delivery in Iowa to the person to whom consigned, nevertheless the act did not authorize the laws of Iowa to be applied to such merchandise whilst in transit from another State and before delivery in Iowa. The Court, in Vance v. Vandercook Co., 170 U.S. 438, considering the Wilson Act and the previous decisions applying it, with reference to the validity of the dispensary law of South Carolina, held that it was not an interference with interstate commerce, in so far as it took charge, in behalf of the State, of the sale of liquor within its borders, and made such sale a source of revenue. In so far, however, as the State law imposed burdens on the right to ship liquor from another State to a resident of South Carolina intended for his own use, and not for sale within the State, the law was held to be repugnant to the Constitution, because the Wilson Act, whilst it delegated to the State plenary power to regulate the sale of liquors in South Carolina shipped into the State from other States, did not recognize the right of a State to prevent an individual from ordering liquors from outside of the State of his residence for his own consumption, and not for sale. The principle settled by these cases was also approved and applied inBrewing Co. v. Crenshaw, 198 U.S. 17, and in Delamater v.South Dakota, 205 U.S. 93. The cases we have just cited involved the validity of State liquor laws, and they adhere to the rulings inCaldwell v. North Carolina, 187 U.S. 622; R. R. v.Sims, 191 U.S. 441, that regardless of the method of collecting the purchase money for the liquor ordered in one State to be transported from another, whether by a c. o. d. shipment, by instructions to the carrier to collect, or by draft with bill of lading attached, the contract, (559) in determining the character of the transaction and its protection, under the Federal laws, against State interference, must be considered as made in the foreign State, although the consignee must pay the purchase money before receiving the package, the only change made by recent statutes being that by the Wilson Act the goods are subjected to the operation and effect of State laws on arrival, which includes delivery to the *Page 462 
consignee, and not before, and under Federal Penal Code, sec. 239, the carrier is restricted in the sphere of his action to the "actual transportation and delivery" of the goods, and cannot act for the buyer or seller for the purpose of making or consummating the sale, nor can he collect the purchase money of the buyer or for the seller. In other respects, the principle of the Caldwell and Sims cases is still in force. It will be observed, on comparison of the two cases, thatR. R. v. Sims, supra, and this case are substantially and in principle alike. In the Sims case the goods were shipped under a bill of lading to the order of the buyer and sent to the agent with instructions to surrender it on payment of the amount due by the buyer. In the present case, Carl Spencer, the consignee, was entitled to the delivery of the goods when he had paid the price for them and presented the bill of lading. The contract of sale was completed on acceptance of his offer to buy the liquor, and this was done at Richmond, Va. The Supreme Court of the United States, in the cases we have cited, and others, has so regarded the transaction and treated the remittance of the draft, with bill of lading attached, for collection, as a mere security for the purchase money. As the decision of this question is necessarily involved in determining whether this is interstate commerce, we must defer to the decisions of the highest Federal court as being authoritative and binding upon us, whether or not we agree in its reasoning or conclusion. It is the supreme law to us, under our Constitution, and because of our allegiance to the Federal Government, when acting within the legitimate scope of its powers and its own Constitution and laws. "Every (560) citizen of this State owes paramount allegiance to the Constitution and Government of the United States, and no law or ordinance of the State in contravention or subversion thereof can have any binding force." Const. of North Carolina, Art. I, sec. 5. This Court has been twice reversed, as we have said, in passing upon this question (Caldwell v. North Carolina, supra, and R. R. v. Sims,supra), and we should, therefore, be careful that we do not depart from what we have thus learned, but follow the doctrine clearly established by the higher court.
It appears in this case that Carl Spencer bought the liquor for his own consumption, and there is no suggestion that he intended to resell. UnderRhodes v. Iowa, supra, he was entitled to receive the package of liquor upon tendering the bill of lading, and not until it had been delivered to him could it be subjected to the "operation and effect" of our laws, not even by force of the Wilson Act.
We have not laid any stress upon the fact that, in the cases we have cited, the Court has reserved the question, whether Congress has the *Page 463 
power to prohibit the transportation of an article of commerce, including liquor, and its delivery to the consignee, though it might forbid its sale thereafter, even in the original package. In this connection, we may appropriately quote what is said on this subject in Delamater v.South Dakota, 205 U.S. 93: "As we have stated, decisions of this Court interpreting the wilson Act have held that that law did not authorize State power to attach to liquor shipped from one State into another before its arrival and delivery within the State to which destined. . . . The rulings in the previous cases to the effect that, under the Wilson Act, State Authority did not extend over liquor shipped from one State into another until arrival and delivery to the consignee at the point of destination, were but a recognition of the fact that Congress did not intend, in adopting the Wilson Act, even if it lawfully could have done so, to authorize one State to exert its authority in another State by preventing the delivery of liquor embraced by transactions made in such other State." This but emphasizes the fact that where the shipment of the liquor is made by the seller, in one State, to the buyer in another, for his own use and consumption, (561) the transaction is interstate commerce, which no Federal law has permitted to be regulated or interfered with by State action, even though the purchase money may be collected through the medium of a draft with the bill of lading attached thereto.
Our conclusion is that, within the meaning of the commerce clause, the sale in this case was completed in Virginia, and not in this State; that the shipment and delivery of the liquor to Carl Spencer, including the dealing with respect to the draft and bill of lading, constituted interstate commerce, whatever our own decisions may be as to the state of the title, and, therefore, that our laws were not violated. We submit to the ruling of the Supreme Court of the United States, which compels us to so consider the question involved.
No error.