OVERTON, J.
 

 This case was brought a few weeks after the case of the State of Louisiana v. Federal Sales Company (La. Sup.) 136 So. 4,
 
 [1]
 
 this
 
 *926
 
 day decided, was disposed of in the civil district court. Its object is to recover $28,782, with 2 per cent, a month interest and 10 per cent attorney’s fees, alleged to be due by defendants, in solido, on malt, under Act No. 4 of the Extra Session of the Legislature for the year 1928. The suit includes the tax on all the malt involved in the case of the State v. Federal Sales Co., and a tax on additional malt.
 

 The theory of plaintiff, in this case, is that the Premier Malt Sales Company, apparently as the owner of the malt, concealed and disposed of it without paying the tax due the state, and so transacted its business with the Federal Sales Company, the Missouri Pacific Railroad, and the Appalachian Warehouse, as to be equivalent to a subterfuge to defraud the state out of the tax due it. The Premier Malt Sales Company and the Douglas Public Service Corporation, Inc., which latter is the proprietor of the Appalachian Warehouse, are alone made defendants in the case. The theory on which the Douglas Public Service Corporation is sued for the tax is that it, together with the Premier Malt Sales Company, delivered the several shipments of malt to the Appalachian Warehouse for the purpose of storage and sale in the city of New Orleans, and did there sell and deliver the malt to the Federal Sales Company. The Douglas Public Service Corporation takes the position that its only connection with the shipments was as a public warehouseman. The Premier Malt Sales Company takes the position that no conspiracy was entered into, and that each shipment was an interstate transaction, and hence not subject to the tax.
 

 The record discloses that the several shipments were made to fill orders, placed by the Federal Sales Company, with the Premier Malt Sales Company, at its Chicago office. After the orders were accepted in Chicago by the Premier Malt Sales Company, that company sent the orders to the Premier Malt Products Company, at Peoria, Ill., a manufacturing subsidiary of the sender, who filled the orders and shipped the goods, obtaining a bill of lading therefor. The bill, in each instance, shows that the Premier Malt Products Company was the consignor, and shows that the shipment was consigned to the order of the Premier Malt Sales Company, and that each shipment had indorsed thereon the following: “Notify Federal Sales Company at New Orleans, Louisiana.” The bill of lading was then forwarded,to the Premier Malt Sales Company, at Chicago, who indorsed it, attached it to an invoice and a draft, drawn on the Federal Sales Company for the amount of the invoice, and sent it, so attached, to the Whitney Central Trust & Savings Bank, Poydras street branch, at New Orleans, with instructions not to deliver the bill of lading until the draft was paid.
 

 The Missouri Pacific Railroad, over which the shipments reached New Orleans, delivered them to the Appalachian Warehouse conducted by the Douglas Public Service Corporation, the manager of which, under arrangements between that corporation and the railroad, held an appointment as depot agent for the railroad, thereby acting in the dual capacity of manager of the warehouse and depot agent. On arrival of the shipments in New Orleans, the warehouse made arrangements to lend the Federal Sales Company money on them', and this the warehouse did by obtaining the bills of lading from the bank on trust receipts, and obtaining .the shipments from the railroad on surrendering the bill of lading. The merchandise would then be stored in the warehouse, and negotiable warehouse receipts issued for it against which the loans were made, and, with the proceeds of the loans, the
 
 *928
 
 drafts were paid and' the trust receipts canceled.
 

 The record discloses that there is nothing extraordinary in this manner of handling shipments, and that it is used as to all types of merchandise. As the manager of the warehouse was also depot agent, it occurred that, at times, some of the malt came into the warehouse before the bill of lading was surrendered. The malt, attached in the suit of the State v. Federal Sales Company (La. Sup.) 136 So. 4, this day decided, was seized before any money was lent on it, or the draft paid, or the bill of lading surrendered. The evidence shows that there was no understanding between the Premier Malt Sales Company and the proprietor of the warehouse, the Douglas Public Service Corporation, as to the manner of taking up the bills of lading, and that the Premier Malt Sales Company knew nothing of it. It also shows that the Douglas Public Service Corporation knew nothing of what became of the malt after it was delivered to the Federal Sales Company, and the s^ime is true as to the Premier Malt Sales Company. So far as we are able to find, the transactions were in good faith, with no intention to defraud the state of any tax, on the part of either the Premier Malt Sales Company or the Douglas Public Service Corporation, the only parties defendant to this suit.
 

 The Douglas Public Service Corporation made no sales of the malt. Its sole connection with the transactions was as warehouseman, and a lender of money to the Federal Sales Company to enable it to get possession of the goods. However, the malt was shipped under negotiable bills of lading to the order of the Premier Malt Sales Company, with invoices and drafts attached, with instructions not
 
 to
 
 deliver the bills until payment of the drafts. It is urged that, in view of the manner of shipment, the sales were not completed until the drafts were paid and the bills of lading surrendered, and, as these things were done in this state, that the sales should be considered as sales made in Louisiana, and hence that liability for the tax arises.
 

 In Fleischman Co. v. Conway, Supervisor, 168 La. 547, 122 So. 845, it was held that the tax levied hy Act No. 4 of 1928 (Ex. Sess.) was a license tax, and that the mere handling, possessing, and storing of malt would not. create a liability for' the tax, but that it is the handling for sale, the selling, and distributing of malt that creates liability for the tax.
 

 Therefore, the question is fairly presented as to whether the sales were made in this state. In passing on the question, it should be borne in mind that a question of interstate commerce is involved, and that the jurisprudence of this state, concerning where a sale is made, in determining whether a vendor’s privilege exists, is not pertinent here.
 

 In the case of Norfolk & Western R. Co. v. Sims, 191 U. S. 441, 24 S. Ct. 151, 152, 48 L. Ed. 254, which involved the constitutionality of a license tax, levied on the sale of sewing machines, imposed by the state of North Carolina upon those engaged in the sale of sewing machines in that state, where the machiné was shipped C. O. D., it was said:
 

 “While it may be entirely true that the property in the thing sold does not pass under a C. O. D. consignment until delivery of the goods and payment to the carrier, and hence it may be said that the sale is not completed until then, yet, as matter of fact, the bargain is made, and the contract of sale completed as such, when the order is received in Chicago, and the machine shipped in pursuance thereof.
 

 
 *930
 
 “A sale really consists of two separate and distinct elements: first, a contract of sale, which is completed when the offer is made and accepted; and, second, a delivery of the property which may precede, be accompanied by, or follow, the payment of the price, as may have been agreed upon between the parties. The substance of the sale is the agreement to sell, and its acceptance. That possession shall be retained until payment of the price may or may not have been a part of the original bargain, but in 'substance it is a mere method of collection, and we have never understood that a license could be imposed upon this transaction except in connection with the prior agreement to sell, although, in certain eases arising under the police power, it. has been held that the sale is not complete until delivery, and sometimes not until payment.
 

 “Indeed, the cases upon this subject are almost too numerous for citation, and the one under consideration is clearly controlled by them. The sewing machine was made and sold in another state, shipped to North Carolina in its original package for delivery to the consignee upon payment of its price. It had never become commingled with the general mass of property within the state. While technically the title of the machine may not have passed until the price was paid, the sale was actually máde in Chicago, and the fact that the- price was to be collected in North Carolina is too slender a thread upon which to hang an exemption of the transaction from a rule which would otherwise declare the tax to be an interference with interstate commerce.”
 

 In American Express Co. v. Iowa, 196 U. S. 141, 25 S. Ct. 182, 184, 49 L. Ed. 421, the case involved a shipment of intoxicating liquor from another state into Iowa, C. O. D., and the question presented was whether a delivery, so made in Iowa, would violate a statute of that state, forbidding the sale of intoxicating liquor. The court, in that ease, said:
 

 “When it is considered that the necessary result of the ruling below was to hold that, wherever merchandise shipped from' one state to another is not completely delivered to the buyer at the point of shipment so as to be at his risk from that moment, the movement of such merchandise is not interstate commerce, it becomes apparent that the principle, if sustained, would operate materially to cripple, if not destroy, that freedom of commerce between the states which it was the great purpose of the Constitution to promote. If upheld, the doctrine would deprive -a citizen of one state of his right to order merchandise from another state at the risk of the seller as to delivery. It would prevent the, citizen of one state from shipping into another unless he assumed the risk; it would subject contracts made by common carriers, and valid by the laws of the state where made, to the laws of another state; and it would remove from the protection of the interstate commerce clause all goods on consignment upon any condition as to delivery, express or implied. Besides, it would also render the commerce clause of the Constitution inoperative as to all that vast body of transactions by which the products of the country move in the channels of interstate commerce by means of bills of lading to the shipper’s order, with drafts for the purchase price attached, add many other transactions essential to the freedom of commerce, by which the complete title to merchandise is postponed to the delivery thereof.”
 

 There should also be cited, as directly pertinent to this case, the case of Caldwell v. North Carolina, 187 U. S. 622, 23 S. Ct. 229, 47 L. Ed. 336.
 

 
 *932
 
 Our conclusion is that the judgment of the trial court, rejecting plaintiff’s demand, is correct, and should he affirmed.
 

 The judgment is affirmed.
 

 [1]
 

 Ante, p. 921.