ASHEBORO WHEELBARROW AND MANUFACTURING COM-
PANY v. SOUTHERN RAILWAY COMPANY.

(Filed 2 December, 1908).

**Carriers of Goods—Penalty Statutes—Draft—Bill of Lading At-
tached—Title—Contracts.**

. There is no contractual relation between the carrier and a payee
of a draft, in a shipment made to consignor's order, "notify," etc.,
"bill of lading attached to draft," until the draft is paid by him .
and the title to the goods passes; and until then, he cannot
recover a penalty in his action against the carrier for delay in
their transportation. (*Stone v. R. R.*, 144 N. C., 220, cited and
distinguished.

ACTION tried before *Councill, J.,* and a jury, March Term,
1908, of RANDOLPH.

The record shows that on 6 December, 1906, the Carnegie
Steel Co. delivered to the Pennsylvania Railroad Co., at Pitts-
burg, Penn., a carload of iron consigned to the Carnegie
Steel Co., Asheboro, N. C., "notify Asheboro Wheelbarrow
and Mfg. Co." The bill of lading was properly endorsed to
the plaintiff company with a sight draft attached, and sent
to bank for collection. Plaintiff paid the draft, took the bill
of lading and received the carload of iron 17 January, 1907.
It was delivered to defendant company at Alexandria 11
December, 1906, and reached Asheboro, N. C., 16 January,
1907. The distance between Alexandria, Va., and Asheboro
is 300 miles. The car should have moved about 100 miles
a day. There was evidence tending to show the value of
plaintiff's plant, number of hands idle by reason of delay,
wages paid, etc. The plaintiff sues for damages caused by
the delay in delivering the iron. Defendant moved for judg-
ment of nonsuit upon the plaintiff's evidence; motion denied,
and plaintiff excepted. Defendant submitted several prayers
for instructions in regard to the measure of damages, all of
which were refused; defendant excepted. His Honor in-

structed the jury that the measure of damages was the legal interest on the capital invested in the plant during the time it was necessarily idle, as a result of the delay, and the wages paid the hands during such time. Defendant excepted. There was a verdict for plaintiff, assessing its damages at $100. Judgment. Defendant duly assigned error and appealed.

*Elijah Moffitt* for plaintiff.
*J. T. Brittain* for defendant.

Connor, J., after stating the case: It is unnecessary to discuss the exceptions directed to the admission of evidence, because we are of the opinion that his Honor should have granted the defendant's motion for judgment of nonsuit. It is common learning that when the vendor delivers an article to the common carrier to be transported by the usual route to the vendee, taking an open bill of lading, the title to the article passes to the vendee or consignee. This is true, although, by the terms of the sale, the vendee is to pay cash. For an injury to the article while in transit, or delay in transportation, or delivery, the carrier is liable to the consignee. *Stone v. R. R.*, 144 N. C., 220. Where, however, the goods were not to be the property of the vendee until delivered, the consignor may sue the carrier for delay. *Summers v. R. R.*, 138 N. C., 295. When the goods are shipped by bill of lading deliverable to the order of the vendor, in the absence of any evidence to the contrary, it is almost decisive to show his intention to reserve the *jus disponendi*, and to prevent the property passing to the vendee. Benja. on Sales (17 Ed.), 372, where the decided cases are cited and commented upon at length. *Dows v. Nat. Bank*, 91 U. S., 618. In *Bank v. Logan*, 74 N. Y., 568, *Folger, J.*, discusses the question and reviews the decided cases. In *Bank v. Crocker*, 111 Mass., 163, *Ames, J.*, says: "A carrier may be a mere bailee for the consignor; and when, by the terms of the bill of

lading, the goods are to be delivered to the consignor's order, the carrier is his agent and not the consignee's . . . . . In a contract of sale the fact of making the bill of lading deliverable to the order of the vendor, when not rebutted by evidence to the contrary, is decisive to show his intention to reserve the *jus disponendi* and to prevent the property from passing to the vendee."

"By such a bill of lading the seller does not reserve merely a lien, but the absolute right of disposal of the goods." 6 Am. & Eng. Enc., 1066, note 1. Until the draft is paid, the contract between the consignor and consignee is executory, that is, the consignor agrees to ship and place in the hands of the carrier the goods at the place designated, to be sold and delivered to the consignee when the draft is paid, both the title and possession remaining in the consignor until that time. If, in such case, the goods were injured or destroyed, the loss falls upon the consignor. If they are delayed in the carriage, the carrier is liable to the consignor. It is the fault of his agent. If the contract of the consignor imposed upon him the obligation to deliver the goods at any specified time, or in a reasonable time, and they are delayed by his agent, the consignee may recover of the consignor such damages as he may sustain as were in the contemplation of the parties. The only evidence in this case was that the goods were shipped to consignor's order, "notify" plaintiff. The authorities appear to be uniform that, in such case, the consignee is not brought into any contract relation with the carrier and must look to the consignor for any damage sustained by a delay, who, in turn, must look to the carrier. In *R. R. v. Barnes,* 104 N. C., 25, the buggy was shipped to the vendee to be delivered on payment of the purchase money. It delivered the goods without the payment of the money to the vendee, who sold to defendant. It was held that the plaintiff could not recover the buggy, because the title passed, by the shipment to the vendee. *Shepherd, J.,* says that if the *litle*

had not passed, the decision would have been different.   It is
manifest here that if the iron had been delivered to plaintiff
without delivering the bill of lading to the carrier, no title
would have passed.   The defendant was the bailee of the ven-
dor to deliver to plaintiff when the draft was paid and, until
that condition precedent was complied with, it had no power
to do so.   Viewed from any aspect, it is clear that the plain-
tiff has no cause of action against the defendant.   Judgment
of nonsuit should have been rendered.

We do not wish to be understood as approving the ruling
of the Court in regard to damages.   There is nothing in the
evidence, as set out in the record, to show that the case comes
within the principle of *Rocky Mount Mills v. R. R.*, 119
N. C., 693, or *Mfg. Co. v. Express Co.*, 148 N. C., 87.
There is nothing to indicate the use to which the iron was to
be put, or that any special damage would be sustained by a
delay in prompt shipment.   In refusing the judgment of
nonsuit, there was

