CITIZENS AND MARINE BANK OF NEWPORT NEWS
v. SOUTHERN RAILWAY COMPANY.

(Filed 10 November, 1910.)

1. Carriers of Goods — "Order, Notify" — Holder for Value — Due Course—Equity—Defenses—Parties.

It is not necessary that the holder for value and the owner of a draft for, and bill of lading of a shipment of goods to consignor's order, notify, etc., should be a holder in due course to maintain an action against the carrier for damages to the shipment, there being no equitable or other defense requiring it; nor is the question affected by the holder's taking a note from the consignor for the amount of the draft, secured by the draft and bill of lading, and without having surrendered the latter, but retaining them as collateral.

2. Carriers of Goods—"Order, Notify"—Title—Holder—Parties.

The consignee cannot acquire title to a shipment of goods to consignor's order, notify, etc., until he pays the draft or has the

bill of lading surrendered to him; and the holder of the draft for value and owner of the bill of lading may maintain his action against the carrier for damages to the consignment arising from its negligence.

3. **Carrier of Goods — Carriers — Continued Liability — Notice of Arrival.**

The liability of a railroad as a common carrier continues until written notice to the consignee is properly given of the arrival of the shipment at destination, which must be delivered personally or by leaving it at the place of business of the party entitled to notice, or by depositing it in the postoffice, as required by law and the rule of the corporation commission.

4. **Same—Negligence—Evidence—Questions for Jury — Warehousemen.**

* In an action for damages to a shipment of a carload of corn, brought by the endorsee for value of the consignor's draft with bill of lading attached, shipped to consignor's order, notify, etc., it appeared that the car of corn was found at its destination on a side track near the place of business of the one to be notified. There was conflicting evidence as to whether the carrier duly mailed the notice of the arrival of the car to the consignee, the carrier relying in defense on its testimony that the "advice" or ' postal card had been duly and properly mailed. *Held*, the evidence raised an issue of fact as to the carrier's negligence for the jury to answer. The question of the railroad's liability as a warehouseman is not presented upon the facts of this case.

APPEAL from *W. J. Adams, J.,* at the March Term, 1910, of DURHAM.

This action was brought to recover damages for the negligent failure to transport and deliver a certain carload of corn, and for negligently failing to take proper care of the corn while in the custody of the defendant, whereby it became overheated and unfit for use. The corn was sold by the Dabney Brokerage Company of Newport News, Va., to the Carolina Roller Mills of Durham, N. C., and was shipped over the defendant's line to Durham. The brokerage company drew a draft on the roller mills for the price of the corn, with bill of lading attached, and the same was endorsed for value to the plaintiff, which is now the owner thereof. The car of corn arrived at Durham on 21 March, 1907, and, as plaintiff alleged, and there was evidence tending to prove, it was permitted to remain on a

side track of the defendant until 3 April, 1907, without any notice to the roller mills of its arrival. When the car was opened the corn was found to be in such bad condition, owing to the high temperature at that time, that the roller mills refused to receive it. The defendant introduced evidence which tended to show that on the arrival of the car of corn at Durham, it caused to be deposited in the postoffice, properly addressed to the roller mills, a postal card notifying that company, as consignee, that the corn was at its station ready for delivery, and there was other evidence tending to show that the postal card had been received by the roller mills. With reference to this part of the case, the court charged the jury that if the postal card was mailed to the roller mills on the arrival of the car, or within a reasonable time thereafter, the law presumed that it was received, and if the jury found the fact to be that it was so mailed, there was no negligence on the part of the railway company, and it would not be liable for any damages sustained by the plaintiff, and the jury should answer the fifth issue No, but if they found that no such notice was given, and that the corn was damaged by the negligence of the railway company, their answer to the issue should be Yes. If they answered that issue Yes, they would assess the amount of damages under the next issue. The bill of lading was drawn to order of the shipper with instructions to notify the roller mills.

It appeared that the draft (with bill of lading) was sent to a bank in Durham for collection, but payment was refused upon demand, for the reason, as stated by the roller mills at the time, that the corn had not arrived. It was then returned to the plaintiff and the amount thereof was charged to the brokerage company on its books. The draft, with bill of lading, was again purchased by the plaintiff and forwarded in the same way as at first for collection and payment was refused. The plaintiff, in order to comply with some law of the State of Virginia, took the note of the brokerage company for $1,400, which represented the amount of said draft and others of a similar tenor given by the brokerage company, and by agreement with it retained the drafts as collateral security for the payment of the note.

The issues, with the answers thereto, are as follows:

BANK *v.* RAILWAY COMPANY.

1. Did the Dabney Brokerage Company sell to the defendant Carolina Roller Mills one car of corn, as alleged in the complaint? Answer: Yes.

2. Did said Dabney Brokerage Company draw a draft on the defendant Carolina Roller Mills, with bill of lading attached for said car of corn and endorse the same to the plaintiff for value? Answer: Yes.

3. Is the plaintiff the holder of said draft in due course? Answer: No.

4. In what amount, if any, is the defendant Carolina Roller Mills indebted to the plaintiff?' Answer: Nothing.

5. Was said car of corn damaged through the negligence of the defendant Southern Railway Company? Answer: Yes.

6. What damage, if any, is the plaintiff entitled to recover of the defendant Southern Railway Company? Answer: $439.97.

Judgment was rendered upon the verdict against the railway company, from which it appealed.

*Foushee & Foushee* for plaintiff.
*Guthrie & Guthrie* for defendant.

WALKER, J., after stating the case. The jury have found that the plaintiff is the holder for value and the owner of the draft and bill of lading, and we do not see why it is necessary that it should be a holder in due course, as contended by counsel, to entitle it to recover damages for injury to the corn caused by the negligence of the defendant. Hutchinson on Carriers (3 Ed.), secs. 197, 198 and 1320; Hale on Bailments and Carriers, secs. 123, 124. The carrier asserted no equity or other kind of defense against the brokerage company which required that the plaintiff should be a holder in due course in order to be protected against it, nor can the fact that plaintiff took a note from the brokerage company for the amount of its indebtedness, and retained the draft and bill of lading as collateral, affect its right to recover, as it is still the owner for value of both papers, having acquired title thereto by virtue of its purchase and the endorsement to it. *Tyson v. Joyner,* 139 N. C., 69; *Bank v. Drug Company,* 152 N. C., 142; *Thompson v. Osborne, ibid,* 408. In

*Young v. R. R.,* 80 Ala., 100, it was held that where a vendor and shipper of goods takes the bill of lading in his own name or it is drawn to his order, he thereby retains the title in himself, and the carrier cannot rightfully deliver the goods to any other person, except on his order or by transfer of the bill of lading. In this case it appears that the title and property in the corn could not pass to the roller mills until the draft was paid and the bill of lading surrendered, and the draft has not been paid.

The decisive question in the case is whether the railway company had relieved itself of liability as carrier by giving due notice of the arrival of the goods. We held in *Poythress v. R. R.,* 148 N. C., 391, that the liability of a common carrier continues until notice of the arrival of the goods at their destination is given and a reasonable time to remove them has elapsed, and that when the carrier has complied with its duty in this respect, its liability thereafter is that of a warehouseman. The notice, as we further held in that case, need not be served personally in order to relieve the railway company of liability as carrier, but it must be in writing and delivered personally or by leaving it at the place of business of the party entitled to the notice, or by depositing it in the post-office, as required by the rule of the Corporation Commission. The subject is ably and exhaustively discussed by Justice Brown in the case just cited, with a full citation of the authorities, and no elaboration of the matter is now required. There was evidence in this case that the defendant's agent had deposited a postal card, or what is sometimes called an "advice-note," in the post-office, informing the roller mills of the arrival of the corn, and there was also evidence to the contrary, and some to the effect that after the goods had, in fact, arrived, an agent of the roller mills telephoned to the defendant's office in Durham and inquired about the corn and was informed that it had not arrived. Some time afterwards the goods were found by mere chance in a closed car of the defendant by an agent of the roller mills, on a side track, in a damaged condition and unfit for use. The question as to the defendant's negligence was fairly submitted to the jury by the court, upon the conflicting evidence and under proper in-

structions. It was largely a question of fact which the jury have decided against the carrier.

It is not necessary that we should consider whether the defendant is liable as warehouseman, under the facts and circumstances of this case, if it had discharged its duty as carrier or its liability as such had been converted into that of a warehouseman.

We have examined the other exceptions and find no reversible error in the rulings to which they were taken.

No error.