STATE v. J. H. FISHER AND MUTUAL AID BANKING COMPANY.

(Filed 19 February, 1913.)

1. Criminal Law—Verdict—Unanswered Counts—Acquittal.

Where a verdict of guilty is rendered on one count in an indictment, and is silent as to the others, it is equivalent to a verdict of not guilty as to these other counts.

2. Intoxicating Liquors—Sales to Minors—Draft, Bill Lading Attached — Payment—Dealers—Banks and Banking—Interpretation of Statutes.

To be guilty of the offense prohibited under the provisions of the Revisal, sec. 3524, the person selling or giving away intoxicating liquors "to any unmarried person under the age of 21 years, knowing the said person to be under that age," must be a dealer therein; and a bank or its officer, in the usual course of a banking business, who accepts money on a draft, bill of lading

S. *v.* FISHER.

for such liquors attached, and surrenders the draft · to the
drawee, by which he is enabled to take the bill of lading to the
carrier and get the shipment, is not a dealer, and hence, by the
transaction, is not liable under the statute.

3. Intoxicating Liquors—Sales to Minors—Contracts—Orders and
Acceptance—Lex Loci—Interstate Commerce—Banks and Bank-
ing—Interpretation of Statutes.

A shipment of intoxicating liquor from another State here,
with bill of lading attached to a draft, and put in course of col-
lection through the banks, is interstate commerce until the de-
livery of the shipment to the consignee by the carrier; and where
the sale of such liquor is made through a sales agent here, and
sent on and accepted by the principal in another State, and ship-
ment made, as indicated, the contract is made in another State,
and the mere fact that the draft was paid here, and the bill of
lading surrendered to the drawee, an unmarried person under 21
years of age, who thereby is enabled to get his bill of lading and
receive the shipment from the carrier, does not affect the inter-
state character of the shipment, so as to make the bank or its
officer thus surrendering the bill of lading guilty of violating
section 3523 of the Revisal.

ALLEN and HOKE, JJ., concurring; CLARK, C. J., dissenting.

APPEAL by the State from *Foushee, J.,* at February Term,
1912, of CRAVEN.

The three defendants, Mutual Aid Banking Company, John
H. Fisher, and A. Hatke, were indicted in the court below for
unlawfully selling liquor, the indictment containing two counts,
one for selling intoxicating liquor to a person to the jurors
unknown, and the other for selling such liquor to Carl Spencer,
a person under the age of 21 years. The defendant A. Hatke,
a member of the firm of A. Hatke & Co., of Richmond, Va.,
wholesale liquor dealers of that city, was not on trial, and the
other defendants severally pleaded "not guilty" to the bill, when
arraigned for trial.    After the evidence was heard, the jury
rendered a lengthy special verdict, the material findings of
which are as follows:    The Mutual Aid Banking Company was,
at the time stated in the bill, engaged in the ordinary business
of banking in the city of New Bern, and John H. Fisher was
its cashier.    A short while before 29 March, 1911, Carl Spen-
cer, who is a minor or person under 21 years of age, and un-

S. *v.* FISHER.

married, ordered from A. Hatke & Co. of Richmond, Va.; through their agent, who was in New Bern, one case of whiskey, to be shipped over the connecting lines of the S. A. L. Railway Company and the Norfolk Southern Railway Company, to him at New Bern. Hatke & Co. delivered the one case of whiskey called for in the order to the S. A. L. Railway Company at Richmond for shipment to New Bern, consigning the same to the order of themselves, "destination New Bern, N. C., notify Carl Spencer at that place," and received from the agent of the S. A. L. Railway Company a bill of lading for the liquor in the usual form. They then drew a draft on Carl Spencer for $8.25, the price of the liquor, and attached it to the bill of lading, mailing the two papers to the Mutual Aid Banking Company for collection. The liquor was shipped over the lines of the two railroad companies, and the Norfolk Southern Railroad Company duly notified Carl Spencer at New Bern of its arrival there, and that it would be held subject to charges for storage and demurrage. On the day this notice was given, Carl Spencer called at the banking house of defendant, inquired for the draft and bill of lading, and was told by the cashier, John H. Fisher, or his assistant, that the papers were there. The bank and its officers knew that the draft was for the price of the liquor, and that the bill of lading had been given by the railroad company for the package containing it. With this knowledge, the bank and its cashier, John H. Fisher, received payment of the draft from Carl Spencer and delivered the papers to him, whereupon he handed the bill of lading to the Norfolk Southern Railway Company at New Bern and received the package of whiskey from it, in the usual manner of its other customers. Before Carl Spencer paid the draft to the bank, his uncle notified John H. Fisher that he was a minor and unmarried, and requested him not to receive payment of the draft from him, with which request he declined to comply. The Mutual Aid Banking Company was incorporated under the laws of this State and authorized to conduct in New Bern a general banking business, and was doing so at the time of this transaction. A. Hatke & Co. are regular wholesale dealers in liquor, having their home and place of business in Richmond, Va.

The special verdict concludes as follows: "If from the foregoing facts the court shall be of opinion that in law the said defendants, John H. Fisher and the Mutual Aid Banking Company, were dealers in intoxicating drinks and liquors, and that the said delivery of the said draft and bill of lading to said Carl Spencer was a sale of a quantity of such drinks and liquors, then we, the jury, do find the defendant John H. Fisher and the Mutual Aid Banking Company guilty in manner and form as charged in the bill of indictment; otherwise, we, the jury, find the defendants not guilty."

The court (*Judge Foushee* presiding) being of opinion, upon the verdict, that defendants were not dealers in liquors, and that the transaction described in the verdict did not constitute a sale to Carl Spencer, as charged in the indictment, directed a verdict of not guilty as to both defendants, upon the said indictment, and judgment being entered thereon for them, the State appealed.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*
*Guion & Guion for Fisher.*
*Moore & Dunn for Banking Company.*

WALKER, J., after stating the case: It is conceded, as we understand, that the special verdict was returned upon the second count, and there is no verdict upon the first count. It was held in *S. v. Taylor,* 84 N. C., 773, that "where the jury find a defendant guilty on one count, and say nothing in their verdict concerning other counts, it will be equivalent to a verdict of acquittal as to them."

The second count of the indictment was framed on Revisal, sec. 3524, which provides that "if any dealer in intoxicating drinks or liquors sell, or in any manner part with for a compensation therefor, either directly or indirectly, or give away such drinks or liquors, to any unmarried person under the age of 21 years, knowing the said person to be under the age of 21 years, he shall be guilty of a misdemeanor; and such sale or giving away shall be *prima facie* evidence of such knowledge. Any person who keeps on hand intoxicating drinks or liquors

for the purpose of sale or profit shall be considered a dealer within the meaning of this section." The jury, by their verdict, after finding and stating certain facts, which we have already set out, submit to the court whether, upon those findings, the court is of the opinion that, in law, the defendants were dealers in intoxicating drinks and liquors, and that the acts of defendants constituted a sale of such drinks and liquors; and both questions the court decided in the negative. . The verdict of the jury, therefore, was confined to the particular offense made criminal by Revisal, sec. 3524, and they have not rendered a verdict for any other crime, nor have they considered the case in any other aspect. It follows that the defendants have been acquitted of the charge upon which the jury passed.

The section of the Revisal upon which the indictment was drawn not only describes the act of selling, which is unlawful, as one committed by a "dealer in intoxicating drinks or liquors," but also defines a "liquor dealer" as "a person who keeps on hand intoxicating drinks or liquors for the purpose of sale and profit." The business of the defendants is not embraced by these words. They were engaged in the business of banking, and were, in no sense, sellers of liquors or dealers therein. There is no finding of fact that they ever sold liquor of any kind or in any quantity, large or small, or that they, or either of them, ever kept "liquor on hand for sale or profit." *S. v. Lawrence,* 97 N. C., 492; *S. v. McBrayer,* 98 N. C., 619. When they received the money from Carl Spencer and delivered the draft and bill of lading for the package of liquor to him, they were engaged in the ordinary and usual business of banking. So that the State failed to show that the defendants were guilty of the specific offense charged against them. The court properly instructed the jury as to the law, and the verdict of acquittal, rendered by the jury in accordance therewith, cannot be disturbed.

But assuming that the defendants, upon the facts stated in the special verdict, must be regarded in law as having assisted in making or consummating the sale of the liquor by A. Hatke & Co. to Carl Spencer, we do not think the case is made any stronger for the State. The sale of the liquor to Carl Spencer

S. *v.* FISHER.

by A. Hatke & Co. was interstate commerce, and could not be affected by the criminal laws of the State. With every disposition to enforce strictly and rigidly the laws of our State prohibiting the sale of liquor, in all cases to which they apply, we must, at the same time, give full force and effect to the provision of the Federal Constitution, which confides to Congress alone the regulation of interstate commerce. It has been enacted by Congress that liquor shipped from one State into another in the course of interstate commerce shall, after its "arrival" in the latter State, be subject to its laws. This law was passed 8 August, 1890, and is known as the Wilson Act (3 Fed. Statutes Anno., p. 853), and it has also forbidden a common carrier to collect, directly or indirectly, the purchase money for any liquor shipped over his line from one State to another, the carrier being restricted by the terms of the act of Congress to "the actual transportation and delivery of the same." Federal Penal Code (1910), sec. 239. It is not contended that either of these acts would sustain the conviction of the defendants under our law prohibiting the sale of liquor in the State, except in so far as the Wilson Act allows the local law to operate after the arrival of liquor in the State, and withdraws from the protection of the Federal laws, to that extent, sales in original packages. The other act, Federal Penal Code, sec. 239, declared unlawful collections by the carrier, under c. o. d. shipments or otherwise. It is contended, though, that the defendants are guilty upon the special findings of the jury, because the package of liquor was shipped, and the bill of lading therefore was drawn to the order of A. Hatke & Co. of Richmond, Va., and reached its destination in this State, at New Bern, and that the sale was made here, when the draft was paid by Carl Spencer at the bank and the bill of lading was delivered to him, as the title then passed to him from Hatke & Co. But the argument leaves out of consideration the fact that the acceptance of the proposal to buy was made by them there, which acceptance was clearly evidenced by the shipment of the goods. But we need not further discuss this question, as it is one for final decision by the highest Federal court, which has said that, in determining what is interstate commerce in

S. *v.* FISHER.

the transportation of liquor from one State to another, it will not attempt to reconcile conflicting decisions of the State courts as to the time when the title passes in the case of a shipment c. o. d. or by draft and bill of lading attached, as in this case. A full and complete answer to the State's contention will be found in *Express Co. v. Iowa,* 196 U. S., 133 (49 L. Ed., 417). In that case, the present *Chief Justice,* writing the opinion as a justice of the Court, and referring to the very question we have before us, says that, if upheld, the doctrine would deprive a citizen of one State of his right to order merchandise from another State at the risk of the seller as to delivery, and it would prevent the citizen of one State from shipping into another State unless he assumed the risk; it would subject contracts made by common carriers, and valid by the laws of the State where made, to the laws of another State, and it would remove from the protection of the interstate commerce clause all goods on consignment upon any condition as to delivery, express or implied. More to the point, and a more conclusive utterance, is this: "Besides, it would also render the commerce clause of the Constitution inoperative as to all that vast body of transactions by which the products of the country move in the channels of interstate commerce by means of bills of lading to the shipper's order, with drafts for the purchase price attached, and many other transactions essential to the freedom of commerce, by which the complete title to merchandise is postponed to the delivery thereof." He then reviews two cases (*Caldwell v. North Carolina,* 187 U. S., 422; *R. R. v. Sims,* 191 U. S., 441), which were taken from this Court by writs of error upon what *Judge White* says is the identical question, and both reversed. Reviewing these cases, and after stating that they are direct authorities against the present contention, and that it makes no difference how the shipment is made, whether c. o. d. or by bill of lading to the shipper's order, he proceeded as follows: "In *R. R. v. Sims,* 191 U. S., 441, 48 L. Ed., 254, 24 Sup. Ct. Rep., 151, these were the facts: A resident of North Carolina ordered from a corporation in Chicago a sewing machine. The machine was shipped under a bill of lading to the order of the buyer, but this bill of lading

was sent to the express agent at the point of delivery in North Carolina, with instructions to surrender the bill on payment of a c. o. d. charge. The contention was that the consummation of the transaction by the express agent in transferring the bill of lading upon payment of the c. o. d. charge was a sale of the machine in North Carolina, which subjected the company to a license tax. The contention was held untenable. Calling attention to the fact that the contract of sale was completed as a contract in Chicago, and after reviewing some of the authorities on the subject of interstate commerce, the Court said (p. 450, L. Ed., p. 258, Sup. Ct. Rep., p. 154): "Indeed, the cases upon this subject are almost too numerous for citation, and the one under consideration is clearly controlled by them. The sewing machine was made and sold in another State, shipped to North Carolina in its original package for delivery to the consignee upon payment of its price. It had never become commingled with the general mass of property within the State. While technically the title of the machine may not have passed until the price was paid, the sale was actually made in Chicago, and the fact that the price was to be collected in North Carolina is too slender a thread upon which to hang an exception of the transaction from a rule which would otherwise declare the tax to be an interference with interstate commerce." He then shows the distinction between State laws interfering with the regulation of commerce which trench upon the domain exclusively occupied by the Congress under the Constitution, and those which do not so interfere, as in the case of a property tax laid on the article transported, when it has become at rest within the State, and, therefore, enjoys the protection of its laws, which is upheld upon the ground that the movement of merchandise from State to State, whilst constituting interstate commerce, is not an import in the technical sense of the Constitution, citing *Steel and Wire Co. v. Speed,* 192 U. S., 500 (48 L. Ed., 538). The State may act also where the particular transaction aids rather than obstructs commerce. We need not enter upon a discussion of this view of the matter. The whole subject was reviewed by us in *Range Co. v. Campen,* 135 N. C., 506; *Harrill v. R. R.,* 144 N. C., 532. Construing the Wilson

Act, the Court held in *Wilkerson v. Rahrer,* 140 U. S., 545 (35 L. Ed., 572), that it was competent for Congress to provide that certain designated subjects of interstate commerce shall be governed by a rule which divests them of that character at an earlier period of time than would otherwise be the case, so as to subject them to the operation and effect of State laws, for instance, after delivery to the consignee of goods shipped to him from another State, and in *Rhodes v. Iowa,* 170 U. S., 412, approving the case of *Wilkerson v. Rahrer,* it was decided that, whilst the Wilson Act caused liquors shipped into Iowa from another State to be divested of their character as articles of interstate commerce after their delivery in Iowa to the person to whom consigned, nevertheless the act did not authorize the laws of Iowa to be applied to such merchandise whilst in transit from another State and before delivery in Iowa. The Court, in *Vance v. Vandercook Co.,* 170 U. S., 438 (42 Ed., 1100), considering the Wilson Act and the previous decisions applying it, with reference to the validity of the dispensary law of South Carolina, held that it was not an interference with interstate commerce, in so far as it took charge, in behalf of the State, of the sale of liquor within its borders, and made such sale a source of revenue. In so far, however, as the State law imposed burdens on the right to ship liquor from another State to a resident of South Carolina intended for his own use, and not for sale within the State, the law was held to be repugnant to the Constitution, because the Wilson Act, whilst it delegated to the State plenary power to regulate the sale of liquors in South Carolina shipped into the State from other States, did not recognize the right of a State to prevent an individual from ordering liquors from outside of the State of his residence for his own consumption, and not for sale. The principle settled by these cases was also approved and applied in *Brewing Co. v. Crenshaw,* 198 U. S., 17 (49 L. Ed., 925), and in *Delamater v. South Dakota,* 205 U. S., 93 (51 L. Ed., 724). The cases we have just cited involved the validity of State liquor laws, and they adhere to the rulings in *Caldwell v. North Carolina,* 187 U. S., 622 (47 L. Ed., 336), and *R. R. v. Sims,* 191 U. S., 441 (48 L. Ed., 254), that regardless of the method of collecting

the purchase money for the liquor ordered in one State to be transported from another, whether by a c. o. d. shipment, by instructions to the carrier to collect, or by draft with bill of lading attached, the contract, in determining the character of the transaction and its protection, under the Federal laws, against State interference, must be considered as made in the foreign State, although the consignee must pay the purchase money before receiving the package, the only change made by recent statutes being that by the Wilson Act the goods are subjected to the operation and effect of State laws on arrival, which includes delivery to the consignee, and not before, and under Federal Penal Code, sec. 239, the carrier is restricted in the sphere of his action to the "actual transportation and delivery" of the goods, and cannot act for the buyer or seller for the purpose of making or consummating the sale, nor can he collect the purchase money of the buyer or for the seller. In other respects, the principle of the *Caldwell* and *Sims cases* is still in force. It will be observed, on comparison of the two cases, that *R. R. v. Sims, supra,* and this case are substantially and in principle alike. In the *Sims case* the goods were shipped under a bill of lading to the order of the buyer and sent to the agent with instructions to surrender it on payment of the amount due by the buyer. In the present case, Carl Spencer, the consignee, was entitled to the delivery of the goods when he had paid the price for them and presented the bill of lading. The contract of sale was completed on acceptance of his offer to buy the liquor, and this was done at Richmond, Va. The Supreme Court of the United States, in the cases we have cited, and others, has so regarded the transaction and treated the remittance of the draft, with bill of lading attached, for collection, as a mere security for the purchase money. As the decision of this question is necessarily involved in determining whether this is interstate commerce, we must defer to the decisions of the highest Federal court as being authoritative and binding upon us, whether or not we agree in its reasoning or conclusion. It is the supreme law to us, under our Constitution, and because of our allegiance to the Federal Government, when acting within the legitimate scope of its powers and its

own Constitution and laws. "Every citizen of this State owes paramount allegiance to the Constitution and Government of the United States, and no law or ordinance of the State in contravention or subversion thereof can have any binding force." Const. of North Carolina, Art. I, sec. 5. This Court has been twice reversed, as we have said, in passing upon this question (*Caldwell v. North Carolina, supra,* and *R. R. v. Sims, supra*), and we should, therefore, be careful that we do not depart from what we have thus learned, but follow the doctrine clearly established by the higher court.

It appears in this case that Carl Spencer bought the liquor for his own consumption, and there is no suggestion that he intended to resell. Under *Rhodes v. Iowa, supra,* he was entitled to receive the package of liquor upon tendering the bill of lading, and not until it had been delivered to him could it be subjected to the "operation and effect" of our laws, not even by force of the Wilson Act.

We have not laid any stress upon the fact that, in the cases we have cited, the Court has reserved the question, whether Congress has the power to prohibit the transportation of an article of commerce, including liquor, and its delivery to the consignee, though it might forbid its sale thereafter, even in the original package. In this connection, we may appropriately quote what is said on this subject in *Delamater v. South Dakota,* 205 U. S., 93 (51 L. Ed., 724): "As we have stated, decisions of this Court interpreting the Wilson Act have held that that law did not authorize State power to attach to liquor shipped from one State into another before its arrival and delivery within the State to which destined. . . . The rulings in the previous cases to the effect that, under the Wilson Act, State authority did not extend over liquor shipped from one State into another until arrival and delivery to the consignee at the point of destination, were but a recognition of the fact that Congress did not intend, in adopting the Wilson Act, even if it lawfully could have done so, to authorize one State to exert its authority in another State by preventing the delivery of liquor embraced by transactions made in such other State." This but emphasizes the fact that where the shipment of the

S. *v.* FISHER.

liquor is made by the seller, in one State, to the buyer in another, for his own use and consumption, the transaction is interstate commerce, which no Federal law has permitted to be regulated or interfered with by State action, even though the purchase money may be collected through the medium of a draft with the bill of lading attached thereto.

Our conclusion is that, within the meaning of the commerce clause, the sale in this case was completed in Virginia, and not in this State; that the shipment and delivery of the liquor to Carl Spencer, including the dealing with respect to the draft and bill of lading, constituted interstate commerce, whatever our own decisions may be as to the state of the title, and, therefore, that our laws were not violated. We submit to the ruling of the Supreme Court of the United States, which compels us to so consider the question involved.

No error.

ALLEN, J., concurring: It is the duty of the State courts to follow the decisions of the Supreme Court of the United States on questions relating to interstate commerce, whether in accordance with their views or not, and that Court held, prior to the Wilson Act of 1890, that intoxicating liquors were the legitimate subject of commerce between the States, and that the owner of such had the right to ship into another State, and sell in the original package, and denied to the State into which it was shipped the power to control or regulate such shipment by taxation or under its policy power. *Leisy v. Hardin,* 135 U. S., 100.

Because of this decision the Wilson Act was passed by Congress, which provides: "That all fermented, distilled, or other intoxicating liquors or liquids transported into any State or territory or remaining therein for use, consumption, sale, or storage therein shall, upon arrival in such State or Territory, be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein

162—36

in original packages or otherwise." And it was said of this act, in *Delamater v. South Dakota,* 205 U. S.: "It is settled by a line of decisions of this Court, that the purpose of the Wilson Act, as a regulation by Congress of interstate commerce, was to allow the States, as to intoxicating liquors, when the subject of such commerce, to exert ampler power than could have been exercised before the enactment of the statute. In other words, that Congress, sedulous to prevent its exclusive right to regulate commerce from interfering with the power of the States over intoxicating liquor, by the Wilson Act adopted a special rule enabling the States to extend their authority as to such liquor shipped from other States before it became commingled with the mass of other property in the State by a sale in the original package."

The language of the act principally in debate were the words, "upon arrival in such State."

Did they mean, after the liquors passed the boundary line of the State, or after they reached the place in the State to which they were shipped, or after they were delivered to the person to whom they were shipped?

"It has been held that the liquor had not 'arrived' in the State, where it was seized in the State while being conveyed by the purchaser to his home from a point outside the State, where he had bought it for his personal use (*S. v. Holleyman,* 55 S. C., 207); where it was in a railroad car standing at a siding and was still in transit (*S. v. Intoxicating Liquors,* 94 Me., 335); or at any time before the arrival of the goods at their destination and their delivery to the consignee (*Rhodes v. Iowa,* 170 U. S., 412); 7 Cyc., 437n.

It was also held in *Delamater v. South Dakota, supra,* that under the Wilson Act the State could prevent an agent from soliciting orders for intoxicating liquors in the State, but the same Court held that c. o. d. shipments could not be regulated, controlled or prohibited by the State (*Express Co. v. Iowa,* 196 U. S., 133); and the injurious effects following this last decision induced Congress to pass the act of 1909, now section 239 of the Penal Code, which reads as follows: "Any railroad company, express company, or other common carrier, or any

S. *v.* FISHER.

other person who, in connection with the transportation of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one State, Territory, or District of the United States, or place noncontiguous to, but subject to the jurisdiction thereof, or from any foreign country into any State, Territory, or District of the United States, or place noncontiguous to, but subject to the jurisdiction thereof, shall collect the purchase price or any part thereof, before, on, or after delivery, from the consignee, or from any other person, or shall in any manner act as the agent of the buyer or seller of any such liquor, for the purpose of buying or selling or completing the sale thereof, saving only in the actual transportation and delivery of the same, shall be fined not more than $5,000."

When this last act is considered in connection with its history, which manifests a purpose on the part of Congress to aid in the enforcement of the prohibition laws of the States, and with the language in the *Express Company case* above cited, which was decided before its enactment, I think, upon the facts appearing in the special verdict, the defendants are liable to indictment in the Federal courts under the Federal statute, although the use of the words "in connection with the transportation" may admit of a different construction.

In the *Leisy case* the Court held that intoxicating liquor could be shipped into a prohibition State and sold in the original package, and Congress then passed the Wilson Act saying that such liquors should be subject to the police regulations of the State "upon arrival in the State." The Court then held that "arrival in the State" was not complete until delivery to the consignee, and that the State had no right under the act to regulate c. o. d. shipments, saying, in answer to the contention of the State: "If upheld, the doctrine would deprive a citizen of one State of his right to order merchandise from another State at the risk of the seller as to delivery. It would prevent the citizen of one State from shipping into another unless he assumed the risk; it would subject contracts made by common carriers, and valid by the laws of the State where made, to the laws of another State; and it would remove from the protection of the interstate commerce clause all goods on consignment

upon any condition as to delivery, express or implied. Besides, it would also render the commerce clause of the Constitution inoperative as to all that vast body of transactions by which the products of the country move in the channels of interstate commerce, by means of bills of lading to the shipper's order, with drafts for the purchase price attached, and many other transactions essential to the freedom of commerce, by which the complete title to merchandise is postponed to the delivery thereof." *Express Co. v. Iowa,* 196 U. S., 133.

Congress then passed the act, which is section 239 of the Penal Code, which provides that any company or person shall be liable to indictment who, in connection with the transportation of intoxicating liquor from one State to another, shall collect the purchase price or any part thereof, before, on, or after delivery to the consignee, etc., or shall act as the agent of the buyer or seller for the purpose of completing the sale thereof, and it seems to me to have been done to meet the objections raised in the *Express Company case,* and to cover the case of a shipment "To order of shipper, notify A. B.," when the bill of lading is sent to a bank with draft attached, and the cashier collects the draft and delivers the bill of lading with knowledge that it covers a shipment of intoxicating liquor, as he has collected the purchase price before delivery, and has acted as agent of the seller in completing the sale.

If it were not for the language of the decisions, and particularly that quoted from the *Express Company case,* which substantially says that the State cannot, under its police power, regulate or control shipments "to order, notify," and but for the obligation upon the State courts, under the Constitution of the United States, to adopt and recognize the decisions of the highest of the Federal courts upon questions affecting interstate commerce, I would also think the argument reasonable and sound that, upon this shipment "to order, notify," the liquors had arrived in this State, under the Wilson Act, when they reached New Bern, and were then the property of the seller; that the sale was made in New Bern by the Richmond firm, and was illegal, and that any one who aided and abetted in the sale was guilty as a principal.

If, however, this position was open to the State, I would concur in the conclusion that the special verdict is defective and will not support a conviction.

The difference between a general and a special verdict is well illustrated by *Kittelle's case,* 110 N. C., 560, and *Bradley's case,* 132 N. C., 1060.

In each case the indictment charges an illegal sale of intoxicating liquors.

In the *Kittelle case* there was a general verdict, and in the *Bradley case* a special verdict, as follows: "That the defendant sold one quart of whiskey to J. B. Constand, in Polk County, about one year prior to the finding of the bill, for which said Constand, in Polk County, paid the defendant 30 cents. If, upon the above facts, the court be of the opinion that the defendant is guilty, the jury so find; otherwise, not guilty."

The general verdict was sustained on appeal, but the special verdict was set aside, the Court saying: "We are of the opinion that his Honor could not have adjudged the defendant guilty upon the special verdict, and that he could not render any judgment thereon. The offense charged is selling liquor without having a license to do so. It is true that it has been the settled law in this State for more than fifty years that 'proof of the existence of a license to retail must come from the defendant.' *S. v. Emery,* 98 N. C., 668, and upon proof of sale, in the absence of such proof, the jury must find the defendant guilty. If, however, the jury shall, instead of returning a general verdict, find a special verdict, they should find every fact, if it exists, either by proof or presumption, essential to the defendant's guilt; otherwise, the court should set the finding aside and direct a *venire de novo.* *S. v. Bloodworth,* 94 N. C., 918; *S. v. Corporation,* 111 N. C., 661; *S. v. Oakley,* 103 N. C., 408."

This declaration of the law is significant and bears directly upon the effect of the special verdict before us, because if a special verdict is fatally defective, which finds there was a sale, but fails to find there was no license, although it has been held for fifty years that the burden of proof is on the defendant to prove the existence of a license, and the jury must find him

guilty, in the absence of such proof, there must be a finding as to knowledge, when that is a material element of the offense.

Let us apply this principle. The special verdict is not based on the first count in the bill of indictment, charging a sale to some party to the jurors unknown, because it so says, and it was known from the beginning of the transaction, that the sale was to Carl Spencer.

He ordered the whiskey, his name was on the bill of lading, his uncle notified the defendant who Carl Spencer was, and Carl Spencer paid the draft and received the bill of lading and the whiskey.

The second count is drawn under section 3524 of the Revisal, which, by its terms, applies only to *dealers* in intoxicating liquors who sell to unmarried minors, *knowing* such person to be under the age of 21 years.

It is conceded that the defendant is not a *dealer,* and cannot be guilty under the second count, except as an aider and abettor. Can he be convicted on the special verdict as an aider and abettor of Hatke & Co. in making an illegal sale? This depends on the guilt of Hatke & Co., because if Hatke & Co. are not guilty on the findings of the special verdict, Fisher cannot be guilty of aiding and abetting Hatke & Co. to violate the law, and when we turn to the special verdict, there is no finding that Hatke & Co. had knowledge that Spencer was under 21 years of age.

No question is raised by the appeal as to the sufficiency of the indictment, nor is the doctrine in the *Kittelle case* involved, and as was said by *Chief Justice Clark* in his concurring opinion in *S. v. Hanner,* 143 N. C., 637: "In a special verdict, the court is not at liberty to infer anything not found."

HOKE, J., concurring: I concur in the disposition made of this appeal, being of opinion that, under the decisions of the Supreme Court of the United States, the final arbiter in such matters, the transaction in question here must be regarded as interstate commerce, and, on the facts presented, is subject exclusively to Federal regulation. The further fact that Congress may have made conduct of this kind an indictable offense

and has found it desirable to do so, only serves to emphasize the position that interference on the part of State authorities is no longer permissible.

CLARK, C. J., dissenting: The first count in the indictment charges a sale to "a person or persons to the jurors unknown." This was held valid by *Hoke, J.,* in a unanimous opinion in *S. v. Dowdy,* 145 N. C., 432, and has been long recognized as the settled practice of the courts. Besides, the special verdict in this case is based upon the second count, which charges the sale of intoxicating liquors to Carl Spencer, a minor.

The facts found in the special verdict are that an agent of the defendants, Hatke & Co., dealers in liquor in Richmond, Va., obtained from Carl Spencer in New Bern an order for the sale of the whiskey, which act our statute makes indictable, and which was held in *Delamater v. South Dakota,* 205 U. S., 93, to be within the jurisdiction of the State court. Hatke & Co. shipped the whiskey on a bill of lading to themselves at New Bern, N. C., and indorsing this bill of lading "notify Carl Spencer," attached thereto a draft on Carl Spencer, and sent it to the defendant bank in New Bern, who through its cashier, the defendant Fisher, received from Spencer the purchase money, $8.25, and thereupon delivered to him the bill of lading indorsed in blank as an order on the railroad company to deliver to him the whiskey. The whiskey was till then the property of Hatke & Co., and was in the warehouse at New Bern. Up to that time Spencer had neither title nor right of possession to the liquor. This transfer of the title and possession by Fisher to Spencer was a sale made in this State and indictable under our statutes.

In *Express Co. v. Iowa,* 196 U. S., 133, the Court held that interstate transportation was interstate commerce, but that owing to the custom of railroad companies and express companies when acting under c. o. d. authority to deliver goods to a purchaser, constructively interstate commerce extended beyond the arrival of the merchandise in the warehouse of the carrier at its destination and covered the action of the carrier up to the time of the actual delivery to the consignee and the

receipt of the purchase money. In *Delamater v. South Dakota,* 205 U. S., 93, *Chief Justice White* again writing the opinion of the Court, says that this doctrine did not cover the delivery to the consignee on c. o. d. shipment when it was intoxicating liquor in prohibition States, and had not been so held "except in those cases which had been decided prior to the Wilson Act."

Congress also passed section 239 of the Criminal Code, which made it indictable under a penalty of not more than $5,000 for any common carrier to deliver intoxicating liquors on c. o. d. delivery in a prohibition State. To evade this, Hatke & Co. did not ship the liquor to Spencer, but *to themselves* at New Bern, N. C., and therefore, as was held by this Court in *Manufacturing Co. v. R. R.,* 149 N. C., 261, no title to the liquor passed to Spencer until the subsequent transaction between Fisher and Spencer by which the title and right of possession passed to Spencer in consideration and on payment of the purchase money. This case has been cited with approval by *Walker, J., Gaskins v. R. R.,* 151 N. C., 20, and by *Hoke, J.,* in *Buggy Corporation v. R. R.,* 152 N. C., 121. In *Bank v. R. R.,* 153 N. C., 346, *Walker, J.,* holds that in a case like this, after the arrival of the goods and notice given, the railroad is merely a warehouseman for the consignor who retains title to "a shipment of goods to consignor's order, notify, etc., until the draft is paid and the bill of lading is surrendered."

The action of Fisher was not as agent for the railroad company, and the railroad company cannot be indicted for his conduct. Fisher was acting as agent of Hatke & Co. Hatke & Co. had agreed to sell the whiskey to Spencer. They had shipped the whiskey to themselves at New Bern, and then through their agent, Fisher, they had perfected the sale to Spencer by delivery of the order upon the railroad company to deliver the goods to him upon the receipt by them, through Fisher, their agent, of the purchase money. This was a sale made in this State by Fisher as the agent of Hatke & Co., and not as the agent of the railroad company. Such act could not be interstate commerce under the Federal statute, which forbade c. o. d. delivery, even if Fisher had been the agent of the railroad company. It

certainly could not be interstate commerce unless Fisher were the agent of the common carrier, doing some act to complete the transportation to the consignee. He was the agent of Hatke & Co., doing an act in their behalf, by their orders and for their benefit, after the delivery of the whiskey in New Bern, to Hatke & Co., who were the consignees, and where it was held subject to their disposal, as was held in *Bank v. R. R.,* 153 N. C., 346, and other cases above cited. "By such bill of lading, the seller does not reserve merely a lien, but the absolute right of disposal of the goods." 6 A. and E., 1066, note 1, which is quoted with approval in *Manufacturing Co. v. R. R.,* 149 N. C., 261.

The act of Fisher could not be interstate commerce unless he were a common carrier or the agent of the common carrier in perfecting the transportation of the goods. But the common carrier had fulfilled its whole duty when it placed the liquor in its warehouse at New Bern subject to the order of the consignee, Hatke & Co. It had no further interest in the matter and no further duty to discharge. The further disposition of the liquor by the transfer of the bill of lading to Spencer and the receipt of the purchase money would have subjected the railroad company to the fine of $5,000 if Fisher had been their agent, but he was not, for the carrier had no further duty to discharge. It simply held the liquor, as said in the authorities above, "at the absolute disposal of Hatke & Co." Its duty as an interstate carrier was at an end.

Our statute, Revisal, 3524, makes the sale to a minor presumptive evidence that Hatke & Co. knew of the minority of Spencer, and this presumption has not been rebutted by any evidence. Indeed, the knowledge of Fisher was its knowledge. *S. v. Kittelle,* 110 N. C., 560. This transaction by Fisher was a sale by him to a minor in this State, with full knowledge of that fact, and therefore *he* is responsible as coprincipal. Besides, it is utterly immaterial that the sale is charged to have been made to a minor. The facts charged and found show a sale of intoxicating liquors by Fisher to Spencer in this State. It is immaterial that he was an agent for another person. The

allegation in the bill and in the facts found, that Spencer was a minor, is *mere surplusage.* Striking out the allegation that Hatke & Co. are dealers and that Spencer was a minor, sufficient remains both in the charge and the facts found to establish the violation of our statute which forbids the sale of intoxicating liquors in this State. It is both charged and shown that Fisher did the acts which constituted such offense.

Fisher was, neither a common carrier nor an agent for a common carrier. The railroad company incurred no liability by reason of his conduct. He was doing nothing for them nor in the way of interstate commerce. He was simply transferring, by direction of Hatke & Co., to Spencer, an order for intoxicating liquors, of which they had the "absolute disposal" and which had been shipped to Hatke & Co. and which was then lying in the warehouse in New Bern subject to their order. In exchange for such order and the transfer of the title and the right to possession to Spencer he received as agent for Hatke & Co. the purchase money. There is no element of interstate commerce in the transaction, but the act was one performed entirely within this State. It had no reference to the transportation from Richmond to New Bern, which had been closed and perfected by the delivery of the liquor consigned to Hatke & Co. in the warehouse at New Bern.

To test this matter, suppose the liquor had been consigned to A. B., and A. B. had thereafter transferred the bill of lading to Spencer in consideration of purchase money. This would have been purely a North Carolina transaction, and in no sense an interstate dealing. It can make no difference that Hatke & Co. were consignors as well as consignees. They had full right to transfer their property, unless forbidden by statute, from Richmond to New Bern, and their ownership of it in New Bern was as complete as it was in Richmond until they transferred the title and possession thereto to a purchaser in consideration of the receipt of the purchase money.

It does not lessen the culpability of Fisher that the sale completed by Fisher had originally been an executory agreement made in New Bern between a former agent of Hatke & Co. and

Spencer, which act is denounced by our laws by a statute (Pell's Revisal, 3524a), which is held valid as an exercise of State sovereignty, and not an interference with interstate commerce, in *Delamater v. South Dakota,* 205 U. S., 93.

If it is indictable in the State courts for the agent to make an agreement here to sell the liquor to Spencer, before shipment, for a stronger reason, after Hatke & Co. have transferred their liquor and put it in the warehouse at New Bern, it is an act in violation of the State law to perfect and complete such sale by the delivery of the whiskey and the receipt of the purchase money. The latter act cannot be an interference with interstate commerce, for Hatke & Co. were consignees. Their disposal of the liquor after its arival here, through their agent, Fisher, was in violation of our law. Such act being a misdemeanor, Fisher is guilty on the special verdict, as a coprincipal.