J. W. RICHARDSON and NEW BERN PRODUCE EXCHANGE COMPANY, INC., v. S. D. WOODRUFF & SONS.

(Filed 17 September, 1919.)

### 1. Vendor and Purchaser—Contracts—Delivery—Intent.

The physical delivery of specific goods contracted for is not required to pass the title to the purchaser, if the intent of the parties otherwise appears from the wording of the instrument.

### 2. Same—"Order, Notify"—Title—Attachment.

Irish potatoes were bought to be placed in cold storage by the seller for future shipment from a distant point by common carrier, and were accordingly shipped "order, notify consignee": *Held*, the contract was executory until the goods were received and accepted by the consignee, giving him reasonable time for inspection before accepting it, to ascertain if they were of the kind or quality he had purchased; and to that time the title remained in the seller, and the goods having been rightfully refused were subject to attachment by the purchaser for moneys he had advanced upon the purchase price.

### 3. Contracts—Ambiguity—Shrinkage—Potatoes—Parol Evidence.

Where Irish potatoes are purchased to be placed in cold storage before shipment by the seller, and, after shipment, they are received from the carrier in a soft condition and sprouting, and the evidence is conflicting as to the meaning of a provision in the contract of purchase "that shrinkage be stood by the purchaser," the terms used are sufficiently ambiguous to be explained by parol, and their meaning is for the jury to determine.

### 4. Attachment—Affidavits—Motions—Actions—Appearance of Defendant—Jurisdiction—Pleadings—Issues.

Where attachment has been sued out as an ancillary process in an action, and the purchaser of the goods has accordingly levied upon them, in order to recover moneys he has paid, in advance, upon the purchase price, the general appearance and answer of the defendant renders the question as to the attachable interest of the plaintiff no longer jurisdic-

tional, this not being raised in the pleadings and not being an issuable question as a matter of right; and objections of law or fact to the sufficiency of the affidavit, or in general to the validity of the attachment as ancillary to the principal demand, should be raised and presented by motion in the cause or, in some instances, by special objection to the form or amount of the judgment.

5. Evidence — Opinions — Facts—Experience and Observation—Potatoes—Cold Storage.

Where the seller has contracted to place Irish potatoes in cold storage for future shipment, under a contract executory until accepted by the purchaser, and upon the latter's receipt thereof they are found to be in bad condition, a witness who, of his own knowledge, is aware of such condition at delivery, and is qualified to know from his own experience and observation in the handling of Irish potatoes the effect of cold storage upon them, etc., is qualified to testify, in his opinion, as to the condition of the potatoes when taken from cold storage for shipment.

ACTION tried before *Devin, J.,* and a jury, at March Term, 1919, of PASQUOTANK.

The action is to recover damages for failure to deliver 100 barrels of seed potatoes, pursuant to a contract of defendant with plaintiff, J. W. Richardson, and in which coplaintiff had acquired an interest pending negotiations. The amount of $5 per barrel had been paid by plaintiff making order, on "deposit," to be applied towards the purchase money, pursuant to the terms of the agreement.

There was denial of liability by defendant and a counterclaim for balance of the purchase money alleged to be due defendants, claiming that the potatoes were in all respects up to contract specifications.

On the issue as to damages, the court restricted plaintiff to recovery at most of the $500 made on deposit, as stated.

As ancillary process in the cause, plaintiffs had sued out an attachment and caused same to be levied on the potatoes that were shipped and after plaintiffs had declined to receive same.

The jury rendered the following verdict:

1. Did the defendants contract to sell to the plaintiffs 100 barrels of Irish potatoes at the price of $12.50 f. o. b. New York, for shipment August the first, upon the terms set out in the correspondence offered in evidence? Answer: "Yes."

2. Did the defendants fail to comply with the terms of said contract? Answer: "Yes."

3. What damage, if any, are the plaintiffs entitled to recover therefor? Answer: "$500 and interest."

4. What amount, if any, are the defendants entitled to recover of plaintiffs by reason of their counterclaim set up in the answer? Answer: ----------------

There was judgment on the verdict for plaintiff and both sides appealed, assigning errors.

DEFENDANT'S APPEAL.

*Meekins & McMullan for plaintiffs.*
*Robert J. Woodruff and George J. Spence for defendant.*

HOKE, J. The facts in evidence tended to show that, in answer to a letter of plaintiff, doing business in Elizabeth City, N. C., of date 7 June, 1917, seeking to purchase a lot of "Peach Blow" "cold storage" seed potatoes, and making inquiry as to price of 100 bags and per carload, defendants, doing business in New York City, wrote in reply from that place on 8 June as follows: "We are in receipt of your letter of the 7th asking us to give you prices on some Peach Blow cold storage potatoes, but we have no Peach Blow, and we promptly wired you that we had 40 bags of Cobblers and 100 bags of Spaulding Rose No. 4. Spaulding Rose No. 4 is very similar to the Peach Blow. We quote you these at $12.50 per barrel f. o. b. New York, for shipment August 1. If you order, we shall expect deposit of $5 a barrel at once, the balance draft attached to bill of lading. Any shrink to be stood by you after they go into cold storage. Goods are sound and a No. 1 now in every matter. We await response to this matter.

Yours very truly,
S. D. WOODRUFF & SONS."

On 11 June plaintiff wrote from Elizabeth City, N. C., accepting offer 100 barrels Spaulding Rose at price of letter, and on 12 June sent a telegram to plaintiff, accepting offer, and on 20 June sent the $500 as required, etc. It was admitted that on 2 August Woodruff & Sons shipped from New York to their own order 86 barrels of Irish potatoes, bill of lading attached, order notify New Bern Produce Company, and same arrived at Elizabeth City on 8 August. There was testimony on part of plaintiff to the effect that the potatoes so shipped, on arrival at Elizabeth City, were utterly unfit for the purpose for which they were ordered, and were at the time they were put in cold storage and at the time same were shipped out of cold storage on 2 August. "That the barrels were about one-half to two-thirds full; that they were sprouting, with sprouts one-half to three inches long; they were soft, shriveled up, and a great many of them rotten." That plaintiff declined to accept the potatoes and thereupon instituted the action for damages, and had issued and levied an attachment on same as property of defendants.

Plaintiff's testimony further tended to show that the term, "Any shrink to be stood by the purchaser after they go into cold storage," as contained in letter of defendant proposing sale, signified only "that when the barrels are filled they will stretch and cause the potatoes to shrink," and had no reference to the condition of the potatoes except perhaps as to weight, but in other respects, potatoes, if up to specifications, should have continued sound to time of arrival in Elizabeth City, and that the market value of seed potatoes at said time of arrival was from $18 to $25 per barrel.

The testimony of defendants tended to show that the potatoes were sound and fully up to specifications when put in cold storage, 20 June, 1917; were properly cared for there, and were sound and all right when shipped; that the natural effect of taking potatoes out of cold storage, exposing same to the temperature then existent, from 2 August to 8, would cause them to shrink and make them soft, etc., etc.; that the term "shrinkage to be stood by you" covers both sprouting, rotting and softening, and "was put in there to protect the defendants," etc.

Upon this, the evidence chiefly relevant to the inquiry, it is insisted for the defendant that the facts showed an executed contract of sale at the time the potatoes were put in cold storage on 20 June, and any damage by reason of such storage or which thereafter followed must be properly borne by the purchaser, but we do not so interpret the agreement. It is undoubtedly true, as defendant contends, that present physical delivery of the goods is not always required to an executed contract of sale but that title will pass without it if that be the intent of the parties as expressed in the agreement. In the last case on the subject, *Teague v. Grocery Co.,* 175 N. C., 195-198, a proper application of the principle is given as follows:

"On the present record there are facts in evidence tending to show that this transaction was an executed contract of sale, having reference to designated and specific pieces of property, and if these facts should be accepted by the jury, it is well understood that present physical delivery of the property is not necessary to the transfer of the title but that the same passes according to the intent of the parties as expressed in the contract between them; and further, that in the absence of specific agreement on the question the presumption is that the title passed at the time of the purchase and without such delivery," citing *Richardson v. Ins. Co.,* 136 N. C., 314; *Jenkins v. Jarret,* 70 N. C., 255; Tiffany on Sales, pp. 82-83; Benjamin on Sales (7th Ed.); p. 728. But while such a position is fully recognized, in sale of specified articles, we concur in the view of his Honor that, by the terms of the agreement, this contract continued executory till the goods were shipped on 2 August, and beyond that, the same having been shipped to defendant's order, and the ques-

4—178

tion of whether the goods were up to specifications was properly submitted to the jury in that aspect, leaving it to them to say what was the significance of the terms, "shrinkage to be stood by .the purchaser," these terms being sufficiently ambiguous to permit of explanation by parol testimony. *McMahan v. R. R.,* 170 N. C., 456, and authorities cited. Nor on the record, as now constituted, can the objection be sustained or properly considered that no attachment lies in this case for that defendant had no attachable interest in the potatoes. Defendant having appeared and answered and defended generally, this question is no longer jurisdictional in its nature, it is not raised in the pleadings nor is it an issuable question as a matter of right. In such case, objections of law or fact to the sufficiency of the affidavit or in general to the validity of the attachment as ancillary to the principal demand should be raised and presented by motion in the cause or, in some instances, by special objection to the form or amount of the judgment. *Mfg. Co. v. Steinmetz,* 133 N. C., 192. And if it were otherwise, the goods, as stated, having been shipped to defendants' own order and rejected by plaintiffs because not in compliance with the contract specifications, title to the goods was in the defendants at the time of attachment levied. *Bank v. R. R.,* 153 N. C., 346; *Ashboro, etc., v. R. R.,* 149 N. C., 261; *Development Co. v. R. R.,* 147 N. C., 503. Even when goods are shipped under an open bill of lading, on a contract of this character, and when the shipment is to be made by common carrier, for delivery at a distant point, the consignee has the right of reasonable inspection in order to ascertain if the shipment is in accord with the contract. Speaking to the subject in 23 R. C. L., p. 1433, title "Sales," sec. 256, the author pertinently says: "It is the general rule that where goods are ordered of a specific quality, which the seller undertakes to deliver to a carrier to be forwarded to the buyer at a distant place, the right of inspection, in the absence of any specific provision in the contract, continues until the goods are received and accepted at their ultimate destination; in such a case the carrier is not the agent of the buyer to accept the goods as corresponding with the contract, although he may be his agent to receive and transport them," citing *Pope v. Allis,* 115 U. S., 363; *Eaton v. Blackburn,* 52 Ore., 300, and other cases in support of the text. In the Oregon case, a very satisfactory statement of the position very generally prevailing is given and appears in the first three head-notes of the case as reported in 16 Anno. Cases, p. 1198, as follows:

"Under an executory contract for the sale and delivery of goods of a specified quality, the quality is a part of the description, and the seller is bound to furnish goods actually complying with such description. If he tenders articles of inferior quality the vendee is not bound to accept them, and unless he does so, he is not liable therefor. This necessarily

gives to the vendee the right of inspection, and he must be given an opportunity to make such inspection before becoming liable for the purchase price, unless the contract otherwise provides.

"A vendee of merchandise shipped from a distant point, under a contract specifying the quality of the merchandise and providing for its delivery f. o. b. at the point of shipment, but which contains no provisions as to the time or place of payment, inspection or acceptance, is entitled to a reasonable time after the merchandise arrives at its destination in which to inspect it at that point, and to reject it if it does not comply with the contract.

"Assuming, without deciding, that where merchandise is sold under a contract providing for its delivery to a carrier f. o. b. at the point of shipment, title vests in the vendee, for some purposes, at the time when the merchandise is delivered to the carrier, such title is, nevertheless, conditional as between the vendor and vendee, the condition being that the merchandise shall be found to be of the quality called for by the contract; and such conditional vesting of title in the vendee does not prevent the latter from exercising his right of inspection when the merchandise arrives at its destination."

And *Bean, C. J.,* delivering the opinion, refers also with approval to *Pierson v. Crooks,* 115 N. Y., 539, and *Alden v. Hart,* 161 Mass., 576, in further illustration of the correct principle. In any aspect of the matter, therefore, on the facts as established by the jury, the title to the potatoes was in the defendants at the time of attachment levied.

Defendant objects, further, that W. W. NewBern, a witness for plaintiffs, who examined the potatoes on arrival at Elizabeth City, and testified as to their condition, was allowed to give his opinion, based upon such examination as to their condition on 2 August when taken out of cold storage. This witness had previously stated, after giving description of potatoes on arrival, that he had had sixteen years experience handling potatoes, handling from 5,000 to 10,000 barrels of seed potatoes each year, some from cold storage and some not, and knew from experience the effect of cold storage upon them. On such statement and under numerous decisions of the Court the opinion of this witness was clearly competent. *Hux v. Reflector Co.,* 173 N. C., 97; *Morriset v. Cotton Mills,* 151 N. C., 31; *Wilkinson v. Dunbar,* 149 N. C., 20. Speaking to its reception in *Wilkinson v. Dunbar, supra,* the Court said:

"Testimony of this kind, from such a source, is coming to be more and more allowed in investigations of this character, and the courts are disposed to admit 'opinion evidence' when the witnesses have had personal observation of the facts and conditions, and from their practical training and experience are in a condition to aid the jury to a correct conclusion. While not expert testimony in the strict sense of the word, it is coming to have a recognized place in the law of evidence."

After careful consideration we find no error as to exceptions appearing in defendant's appeal, and on such questions we are of opinion that the judgment should be affirmed.

No error.

PLAINTIFF'S APPEAL.

*Meekins & McMullan for plaintiff.*
*Robert J. Woodruff and George J. Spence for defendants.*

HOKE, J. Plaintiff excepted and appealed from a ruling of the court restricting the amount of damages to the $500 advanced as a deposit. The plaintiff having, as established by the verdict, rightfully exercised his privilege of rejecting the potatoes because not in compliance with the specifications, the title to the goods remained in the defendants, plaintiffs are assuredly entitled to recover the $500 paid on deposit, and, as now advised, we see no reason why, in addition to this amount, they should not be allowed to recover the difference between the contract and market price at the time and place of delivery, as provided in the executory contract, f. o. b. New York, 1 August, 1917, this being the rule ordinarily applicable in such cases and illustrated and applied in numerous decisions of this Court on the subject. *Flour Mills v. Distributing Co.,* 171 N. C., 708; *Tillinghast v. Cotton Mills,* 143 N. C., 268; *Hosiery Co. v. Cotton Mills,* 140 N. C., 454; *Coal Co. v. Ice Co.,* 134 N. C., 574.

For the error indicated and on plaintiff's appeal there will be a new trial on the issue as to damages, and it is so ordered.

Partial new trial.